The petition was filed under sec. 1926 of The Code, and, after setting out the boundaries of the land of the petitioner, alleges: "That some of the dividing lines between Joseph McAdams and your petitioner, to wit: From a stone and pointers, his (McAdams) corner, (392) N. 8 chains to a stake; thence W. 24 chains to pointers; thence S. 9.50 chains to the beginning, are in dispute," and asks for an order directing the processioning of his land.
Thereupon (a summons having been duly issued and served upon the defendants) an order was issued to the county surveyor, ex officio
processioner, directing him to procession the land mentioned in the petition, who reported:
"That in pursuance of the notice and order returned herewith, he proceeded on Tuesday, 26 April, 1887, to run the lines named in the order. He begun at a rock, formerly a post-oak stump, in the road, and run N. 86 2/3 degrees W. 29 chains to a rock, formerly a post oak; thence N. 3 1/3 degrees E. 8 chains to a stake. When he got to the end of the eight chains, and *Page 320 
was about to run the next line west, Joseph McAdams disputed the line and forbade the undersigned to proceed further in running or marking the same."
Thereupon freeholders were appointed in accordance with sec. 1928 of The Code to proceed with the processioner to establish the lines in dispute, and the following report was made by them:
"We, J. N. H. Clendennis, W. M. Andrews, Wm. G. Kirkpatrick and Jerry Iseley, commissioners, being freeholders of said county, in obedience to an order of the Superior Court, after being duly sworn to do equal right and justice between the contending parties, proceeded on 31 May, 1887, the said parties, with their attorneys and witnesses, being present, to establish the lines in dispute between the said Clinton M. Euliss and the said Joseph McAdams, as follows: Beginning at a rock, formerly a post-oak stump, in the road leading from Graham to Big Falls, a short distance north of the junction of the said road with the road leading from Burlington to Big Falls from said rock; thence N. 86 2/3 degrees W. 29 chains to a rock and pointers; thence N. 3 1/2 degrees (393) E. 8 chains to a rock; thence N. 86 2/3 degrees W. 23.50 chains to a rock; and we have caused the said lines to be run, marked and processioned as above described, and find that they are the true boundary lines dividing the lands of the said Clinton M. Euliss and the said Joseph McAdams, and that said lines so established and processioned by us are the same claimed by said Euliss and disputed by the said McAdams, and that they are the same forbidden to be run and marked by the said McAdams — so that we find the contention against said McAdams and in favor of said Euliss; that with respect to the boundary lines dividing the lands of the said Clinton M. Euliss from the lands of other contiguous owners, we find there is no dispute.
"The lines in dispute and run, marked and established by us, were run by Lewis H. Holt, county surveyor and ex officio processioner; that each of said contending parties had present a practical surveyor, to wit: the said Clinton M. Euliss had present J. G. Tate; the said Joseph McAdams had present Joseph P. Albright."
To this report the defendant filed exceptions and moved to quash. The following are the only exceptions, which need consideration:
2. Because no survey and plot were made of either the tracts of land belonging to the said Euliss, or of that belonging to the said McAdams, being the two tracts adjacent upon the disputed lines, which lines the commissioners were to settle between the said parties, the said McAdams being then and there present with his deeds, and demanding that a survey and plot of each tract be made. *Page 321 
5. Because the report does not state and show any of the facts and circumstances attending said survey, from which the court can see and judge of the correctness of the survey made, or of the conclusions of the jury or commissioners as to the rights of the parties interested in the lands; and further, that the report does not show that any deed was present, or what, if any, deed they run by, or what were the claims or contentions of the parties, or what facts or (394) circumstances determined the conclusion at which the commissioners arrived.
6. That the whole report and proceedings are so meagre and so vague and uncertain that the court cannot see upon what the commissioners or jury founded their verdict, and that none of the facts and circumstances attending the survey are stated, so as to enable the court to pass upon exceptions, without resort to affidavits.
In support of his exceptions the defendants filed an affidavit, setting out minutely and at great length the action of the processioner and the freeholders, and the deed under which he claims, and that he was present with these deeds, and when "on the disputed lines" he presented his deed and those of preceding owners, under which he claimed the land in dispute, "to the processioner and jury (freeholders), and demanded that they survey the line in dispute, and all the lines of his said land, and also that they would survey the tract of the claimant Euliss," and make plats of each of said tracts of land, etc., and that such survey was not made, but it was necessary to settle the dispute between the plaintiff and the defendant.
On behalf of the plaintiff, affidavits of the freeholders were filed also at great length, in which they set out their action and the evidence upon which they acted, and they say, among other things: "We directed the processioner where to run and to make a plat of the Euliss land, and that the plat filed by him is a part of our report, and we supposed was filed at the same time, but have heard that it was not, or, if filed, was lost or misplaced. The plat now on file shows the disputed lines as established by us."
The processioner in his affidavit, among other things, stated: "That he either made and filed a plat of the land of the plaintiff, accompanying the report, and part of the report of the commissioners filed 28 June, 1887, and it has been misplaced — his recollection being that (395) he made such a plat — or his failure so to make and file such a plat was an oversight; at all events, the plat made by me, and filed some time since, is the same as the one made, or should have been made, to accompany the report," etc. *Page 322 
The following is the plat accompanying and referred to in the affidavit:
[EDITORS' NOTE: THE PLAT IS ELECTRONICALLY NON-TRANSFERRABLE.], SEE 101 N.C. 322]
"This plat represents the land of Clinton M. Euliss in Alamance County, North Carolina, adjoining the lands of S.E. Jeffreys, Margaret Stanley, James McAdams and others, and bounded as shown in the plat surveyed (as stated above) by me on 31 May, 1887, containing 116 acres, more or less, by old deed.
(Signed) LEWIS H. HOLT, (396) Co. Sur. Alamance, and Processioner."
The introduction of the affidavit on behalf of the plaintiff was objected to by the defendants, and that of the defendants was objected to by the plaintiff, but these objections were overruled by the court (the clerk).
The surveyor, or processioner, filed a plot of the plaintiff's tract of land on 2 April, 1888, which is not claimed to be made from his own survey, but from old deeds which the plaintiff holds under, except as to the two disputed lines. This plot was objected to by defendant McAdams. After considering it, together with the affidavit supporting it, it was admitted and allowed to be filed.
The clerk gave judgment sustaining the exception of the defendant, and allowing the motion to quash, and from this the plaintiff appealed to the Superior Court in term.
In the Superior Court the following judgment was rendered: *Page 323 
"After an inspection of all the papers, and after hearing argument and suggestions of counsel, it is considered by the court that the statute, as contained in chap. 48 of The Code, has been complied with. The ruling of the clerk in admitting the affidavits and plots is sustained. The ruling of the clerk in quashing the proceeding is overruled, and the exceptions of defendant are overruled; and thereupon it is ordered and adjudged: That the report of the freeholders and processioners be confirmed and be recorded with the plot, and that the plaintiff recover his cost of the defendant, to be taxed by the clerk"; from which the defendant appealed.
There was a vast deal of unnecessary and irrelevant matter sent up with the record, some of it evidence, and much of which no doubt would have been material in settling the boundary line in dispute in the trial of the cause in the Superior Court in term, if the report of the survey and proceedings of the (397) freeholders and processioner had disclosed what that dispute was. It is impossible, either from the report or the plat to see what the conflicting claims of the disputing parties were. It is true the report speaks of the line "established and processioned," as being the same "claimed" by Euliss and "disputed" by McAdams, but there is not the slightest indication in the report or in the plat to show the contention or claim of McAdams, from the which the Court can see, upon a review of the proceedings, whether the one or the other was the correct line.
"When a line is disputed and the processioner is forbidden by any person" to proceed further, he is required to report the matter to the Superior Court, "stating truly all the circumstances of the case, etc.," and thereupon five freeholders are appointed, who, with the processioner, shall establish the disputed line or lines, "and procession the same, and make report of their proceeding," etc.
Except as to the classes of persons embraced in the proviso, sec. 1929 of The Code, providing that, "Every person whose lands shall be processioned to him according to the directions of this chapter, shall be deemed and adjudged to be the sole owner thereof, and upon any suit commenced for such land, the party in possession may plead and give the proceeding under this chapter in evidence." Section 1930 gives to either party the right to appeal.
As the processioning of land may fix the rights and title of parties, the importance of a full and strict compliance with the requirements of *Page 324 
the law is apparent, and unless complied with by the processioner and freeholders, their proceedings will be set aside.
As was said in Hoyle v. Wilson, 7 Ired., 466, "the report of the processioner is radically defective in not stating with precision the claim of the respective parties, so as to show what lines were disputed, (398) or how far they were disputed." In Carpenter v. Whitworth, 3 Ired., 204, it is said by Gaston, J.: "It would seem indispensable where, in the course of a processioning, a dispute arises with one of the persons notified, and the claimant wishes the dispute to be thus decided, the certificate (report) should be set forth to show therein what the subject of dispute is — that is to say, the respective claims and allegations of the parties — so that the matter may plainly appear upon which they are at issue. Technical terms are not indeed required, but in the language of the act, "all the circumstances of the case," which must mean all the things controverted, "shall be truly set forth."
"It is not sufficient that it should be reported that two persons, owning coterminous land, claimed lines. It ought to state the lines claimed by each." Mathews v. Mathews, 4 Ired., 155; Porter v. Durham, 90 N.C. 55;Forney v. Williamson, 98 N.C. 329, and cases cited.
Concluding that the plat made by the processioner shall be considered as if made and filed with the report, it is not such a plat as is contemplated by the statute, and is, for the reasons already stated, fatally defective.
The 2d 5th, and 6th exceptions of the defendant must be sustained, and this renders it unnecessary for us to consider the others. There is error, and the report and proceeding of the processioner and freeholders must be quashed.
Error.
Cited: Roberts v. Dickey, 110 N.C. 69.
(399)