A. W. BUMGARNER v. DR. W. M. CORPENING AND WIFE, AVIS CORPENING.

(Filed 10 April, 1957.)

**1. Boundaries § 6—**

Title or ownership is not directly in issue in a processioning proceeding, and the proper issue to be submitted to the jury is as to the true location of the dividing line between the lands of the respective parties.

**2. Same—**

Where, in a proceeding to establish the boundary between adjoining landowners, respondents file answer denying location of the boundary as contended by petitioner and also allege ownership of the disputed area by specific description in the answer, the proceeding in effect becomes an action to quiet title, G.S. 41-10, and on appeal to the Superior Court issue involving ownership is properly submitted to the jury.

**3. Boundaries § 3b—**

Where the owner of a tract of land divides it by deeds, each calling for a road as the boundary between the tracts, the road is the true dividing

line, and conflicting evidence of the respective parties as to the location of the road at that time is properly submitted to the jury.

**4. Adverse Possession § 15—**

Where the parties claim under deeds from a common source calling for a road as the dividing line between the tracts, but subsequent deeds in the chain of title of respondents describe the land by specific description without reference to the road, respondents are entitled to claim the land encompassed in the description in the intermediate deeds as under color of title, and when they offer evidence of adverse possession under their deeds, an instruction limiting their claim to the road as it existed at the time of the execution of the deeds from the common source, is error.

**5. Adverse Possession § 16—**

Where the description in the deed from the common source of title is enlarged in descriptions in subsequent deeds in the chain of title, the party claiming the additional land by adverse possession under color of title must show actual possession of the additional land, since possession under the deed from the common source could not be constructively extended to include the additional land.

**6. Adverse Possession § 23—**

Conflicting evidence as to the character or extent of the possession under color of title raises the issue for the determination of the jury.

Appeal by defendants from *Pless, J.,* January 1957 Term, Caldwell.

On 6 June 1955 A. W. Bumgarner instituted a special proceeding in the Superior Court of Caldwell County against W. M. Corpening. His petition, filed when the summons issued, alleged that petitioner was the owner of a tract therein specifically described, that the defendant was the owner of an adjoining tract, that the location of the boundary between the two tracts was in dispute. The petition asserts the true location of the disputed boundary is: "Thence with the center of the old Lovelady Road, North 61 deg. 30′ East 14 poles, North 41 deg. East 8 poles, North 24 deg. 30′ East 16 poles, North 38 deg. East 20 poles, North 58 deg. 30′ East 30 poles to a maple tree on the south bank of Gunpowder Creek." The boundary asserted by petitioner is his northern boundary. He prays that the line between plaintiff and defendant be established in accordance with his contention.

Defendant W. M. Corpening answered. He admitted that he and petitioner were adjoining property owners, that the boundary between their property was in dispute. He denied that the line separating their properties was as alleged by petitioner. He alleged he was the owner of a tract of land specifically described in his answer and averred that the true boundary between his land and the land of the petitioner ran: "Thence South 40 deg. West 76 poles to a stake, formerly a pine; thence South 58½ deg. West 15 poles to a post oak." He alleged: "the line

as claimed by the petitioner is not the correct line, but the line as set out by the defendant is the correct line, and this defendant requests that the line be established . . ."

Pursuant to an order of the clerk, a survey was made and a map filed showing the contentions of the parties. The line claimed by petitioner begins at a pine indicated by the figure 1 and the letter A on the old Lovelady Road and runs with the old Lovelady Road as located by petitioner to figure 5, a point on Gunpowder Creek, a short distance north of the point where Lovelady Road crosses the creek. The location of the line claimed by petitioner is indicated on the map by the figures 1, 2, 3, 4, 5.

Defendant asserts his southern boundary is depicted on the map as beginning at letter B, a large maple on Gunpowder Creek. This point is south of figure 5 and north of the point where the old Lovelady Road crosses Gunpowder Creek. The line claimed by defendant runs from this point south 47 west to a pine on the Lovelady Road indicated by the letter A and the figure 1.

The clerk held a hearing and fixed the location of the line dividing the properties of petitioner and defendant. From this judgment an appeal was taken to the Superior Court in term.

During the course of the trial Avis Corpening, wife of W. M. Corpening, voluntarily made herself a party defendant and the pleadings were amended accordingly.

The court submitted, as determinative of the controversy, issues which were answered as follows:

"1. Is the petitioner A. W. Bumgarner the owner of the disputed lands lying generally to the North of the lines marked A to B on the Court Map?

"Answer: YES.

"2. Are the respondents Dr. W. M. Corpening and wife the owners of the said lands?

"Answer: No."

Judgment was thereupon entered adjudging petitioner the owner of the area in controversy, describing it by metes and bounds. Defendants appealed.

*W. H. Strickland for plaintiff appellee.*
*L. M. Abernethy and Hal B. Adams for defendant appellants.*

RODMAN, J. The court charged the jury: "Ordinarily, gentlemen, we have somebody that has an older title and somebody that has been in possession of the land in dispute. In this case, gentlemen, they both go back to a common source of title. They both claim from one of the great-grandfathers, Bumgarner, so neither has an older title than the

other, and neither has exercised any possession of it up until the last three or four years and it takes at least seven years to acquire title by possession . . ."

Defendants excepted to the quoted portion of the charge, insisting that the court had misconstrued the nature of the controversy and failed to give effect to evidence in support of the title asserted by defendants. The exception is appropriately taken. The issues and judgment establish that title was put in issue. The charge proceeds upon the assumption that only a question of boundary is involved.

In processioning proceedings the proper issue is: "Where is the true location of the dividing line between the lands of the plaintiff and those of the defendants?" *Welborn v. Lumber Co.*, 238 N.C. 238, 77 S.E. 2d 612; *Goodwin v. Greene*, 237 N.C. 244, 74 S.E. 2d 630; *Cornelison v. Hammond*, 225 N.C. 535, 35 S.E. 2d 633; *McCanless v. Ballard*, 222 N.C. 701, 24 S.E. 2d 525.

Title or ownership is not directly put in issue in a processioning proceeding. *Nesbitt v. Fairview Farms, Inc.*, 239 N.C. 481, 80 S.E. 2d 472; *Brown v. Hodges*, 230 N.C. 746, 55 S.E. 2d 498; *Roberts v. Sawyer*, 229 N.C. 279, 49 S.E. 2d 468; *Geddie v. Williams*, 189 N.C. 333, 127 S.E. 423; *Nash v. Shute*, 182 N.C. 528, 109 S.E. 353; *Parker v. Parker*, 176 N.C. 198, 97 S.E. 223; *Cole v. Seawell*, 152 N.C. 349, 67 S.E. 753.

Where a special proceeding is begun to fix the location of the dividing line between two tracts of land, and defendant, by his answer, puts title to the disputed area in issue by alleging ownership, the proceeding in effect becomes an action to quiet title as provided by G.S. 41-10. *Simmons v. Lee*, 230 N.C. 216, 53 S.E. 2d 79; *Roberts v. Sawyer, supra; Clark v. Dill*, 208 N.C. 421, 181 S.E. 281. When the question of title is raised, the clerk should transfer the proceeding to the Superior Court in term. G.S. 1-399.

The issue involving ownership was properly submitted to the jury. This is so because defendant, by his answer, asserts ownership of a specific tract of land which includes the area in dispute. Boundary was also at issue.

The evidence discloses that the land to which petitioner asserts title was originally owned by Thomas Bumgarner. The land to which defendants assert title was likewise originally owned by Thomas Bumgarner. In August 1889 Thomas Bumgarner made a deed to T. C. Bumgarner and wife, Polly, for lot number 6, describing it by metes and bounds. The pertinent part of the description in that deed reads:

". . . to a whiteoak by the *sid* of Lovelady N. then E 39 north with the road 26 P. to *posteoak* corner of Lot No. 1 and 2 same course 14 P. to pine then *North 56 E with the road 70 P to a maple near the ford of Big Gunpowder Creek* . . ."

The pine referred to is indicated on the court map by the figure 1 and the letter A. Its location is not in controversy. Defendants, as hereafter noted, connect their claim of ownership with the foregoing deed, but it is not their only source of title to the disputed area.

Petitioner traces his title to a deed from Thomas Bumgarner to M. L. D. Bumgarner dated August 1889. The pertinent portion of the description in that deed is: ". . . North 60 E. with the Road 14 poles to a pine then North 86 E. with R. 70 poles to maple near Big Gunpowder ford . . ."

As between the grantees of Thomas Bumgarner, the Lovelady Road was the true dividing line. *Trust Co. v. Miller*, 243 N.C. 1, 89 S.E. 2d 765; *Newkirk v. Porter*, 237 N.C. 115, 74 S.E. 2d 235; *Lance v. Cogdill*, 236 N.C. 134, 71 S.E. 2d 918; *Gray v. Coleman*, 171 N.C. 344, 88 S.E. 489. Petitioner offered evidence to support his contention that the Lovelady Road in 1889 was not a straight line but conformed with the location shown on the map by the figures 1, 2, 3, 4, and 5. Defendants offered evidence to support their contention that the correct location of the Lovelady Road in 1889 was a straight line from the pine, letter A, to letter B on Gunpowder Creek.

If defendants' contention as to the location of the road was correct, he had the superior title to the disputed area as all of the deeds under which petitioner asserted title fixed the road, as his northern boundary and he asserted no other source of title. It was proper for the court to submit this aspect of the case to the jury. He did so in this language: "Now, gentlemen of the jury, this case relates to where the lines of Lot #6 of the old Bumgarner lands is; that is the question that you have to decide, that is the line in question, the one between Mr. Bumgarner and Dr. Corpening."

Defendants excepted to this instruction. Their exception is well taken. As stated, the location of Lovelady Road was one phase of the case, but it was not necessarily conclusive, and the court should not have so limited it. Defendants do not limit their claim to the disputed area to the title derived from Thomas Bumgarner. They rely on the descriptions contained in the subsequent deeds and possession thereunder as an additional source of title.

In July 1938 Mrs. T. C. Bumgarner conveyed to Mrs. Coyt Wallace the lands claimed by the defendants. The pertinent calls in that deed are: ". . . then down said creek South 3 deg. West 46 poles *to a large maple at the West bank of creek; thence South 40 deg. West 76 poles to a stake formerly a pine* . . ." This description is used in the deed from Mrs. Coyt Wallace to T. A. Bean dated in 1943 and in the deed from Martin, commissioner, to defendants dated 20 June 1947. The absence of the reference to the road in these deeds leaves nothing to control course and distance. Hence, if the Lovelady Road was located

in 1889 as petitioner contends, defendants had good title south as far as the road (the boundary fixed by Thomas Bumgarner, the common source), and color of title from 5 July 1938 (the date of the deed from Mrs. Bumgarner to Mrs. Wallace) to that area lying between the road and the southern line called for in the deed. *Trust Co. v. Miller, supra; Whiteheart v. Grubbs,* 232 N.C. 236, 60 S.E. 2d 101; *Vance v. Guy,* 223 N.C. 409, 27 S.E. 2d 117; *Ingram v. Colson,* 14 N.C. 520.

Defendants, having color of title, could acquire good title by seven years' continuous adverse possession under their color, but such possession, in order to perfect title, must be an actual possession of the disputed area. *Whiteheart v. Grubbs, supra; Berry v. Coppersmith,* 212 N.C. 50, 193 S.E. 3; *Boomer v. Gibbs,* 114 N.C. 76. Actual possession of the land acquired from the common source would not be constructively extended so as to constitute possession of the land to which defendants only had color of title.

E. M. Bean, a witness for defendants, testified: "This land that is in controversy here has been in our possession for years, I mean the T. C. Bumgarner heirs. It was his before he died, and it was in Aunt Polly's possession before she died. After she died it went to Coyt Wallace. She had it divided up herself, and it has been in the possession of T. C. Bumgarner and Mrs. T. C. Bumgarner and Mrs. Wallace, and T. A. Bean and on down to Dr. Corpening."

Thus there was evidence that the defendants' ancestors in title had had possession *of the land in controversy* under color for more than seven years.

Defendant W. M. Corpening testified that he had had possession of the land "as surveyed" since the date of his deed in 1947. The action was instituted 7 June 1955. True, the defendant, on cross-examination, testified that he had only had the area in controversy under fence some two or three years before the institution of the action, but the conflict in the testimony, if there was conflict, as to the character or extent of the possession was a question for the jury.

Defendants were at liberty to establish their title to the land in controversy without having to plead the source or manner in which they acquired title. *Jones v. Percy,* 237 N.C. 239, 74 S.E. 2d 700; *Richards v. Smith,* 98 N.C. 509.

On the record presented, defendants were entitled to have the jury determine not only the location of the Lovelady Road with the burden on the petitioner, but the possession of the area in controversy under color for the statutory period with the burden of establishing that fact on defendants.

New trial.