NANCY PRUDEN, MARY P. WILLIS AND VIRGIE P. PHELPS, PETITIONERS v. J. B. KEEMER AND WIFE, ELLA KEEMER AND JOHN HENRY BULLOCKS AND WIFE, OPHELIA BULLOCKS, RESPONDENTS.

(Filed 12 June 1964.)

1. Clerks of Courts § 1—

The clerk of the Superior Court has no common law or equitable jurisdiction but only that jurisdiction conferred by statute.

**2. Boundaries § 1—**

A processioning proceeding does not put in issue title to real estate but only the location of a disputed boundary between the land of petitioners and adjacent lands. G.S. 38-1.

**3. Boundaries § 8—**

In a processioning proceeding, what constitutes the boundary line is a matter of law, where it is located is a matter of fact.

**4. Judgments § 13—**

Failure to answer admits the facts alleged in the complaint or petition and entitles plaintiffs or petitioners to such judgment only as is proper upon the facts thus admitted, so that if the facts alleged are insufficient to constitute a cause of action, default judgment rendered thereon is a nullity.

**5. Same; Boundaries § 7—**

Where the petition in processioning proceedings does not allege what boundary is in dispute between petitioners and respondents, and, while containing a legal description of the lands claimed by petitioners, fails to locate any lines as claimed by petitioners on the earth's surface, the petition is fatally defective and insufficient to confer jurisdiction on the court. G.S. 38-1.

**6. Judgments § 19—**

A void judgment is a nullity.

APPEAL by respondents from *Parker, J.,* August-September 1963 Session of BERTIE.

This special (processioning) proceeding was instituted July 20, 1961, under G.S. 38-1 *et seq.;* and on July 20, 1961, the summons and petition were served on each defendant.

In their petition, addressed to the clerk of the superior court, petitioners alleged:

"1. That petitioners are the owners of Lot No. 5 of the Jacob Pruden land division, containing 195 acres, more or less, and more particularly described in Book RR, page 42, Bertie County Public Registry, and being more particularly described as follows, to-wit:

"BEGINNING in the Hog Pond Branch and running thence North 4 degrees East 1650 feet along the Cowan land; thence South 55 degrees West 1056 feet; thence North 32 degrees West 503.25 feet; thence North 27 degrees West 561 feet, North 20 degrees 30 minutes West 462 feet; thence along Union Bag-Camp Paper Corporation's line North 39 degrees East 1534.5 feet; thence South 34 degrees 30 minutes East 330 feet; thence South 58 degrees East 825 feet; thence South 82 degrees 30 minutes East 643.5 feet; thence South 85 degrees 30 minutes

East 660 feet to Guy's Hall Branch; thence along Guy's Hall Branch and Hog Pond Branch to the point of BEGINNING.

"2. That the true and correct location of the line of petitioners' lands and as claimed by them is as follows: BEGINNING at a point in Guy's Hall Branch at the call above, reading 'South 85 degrees 30 minutes East 660 feet,' and running thence from Guy's Hall Branch, North 85 degrees 30 minutes West 660 feet, North 82 degrees 30 minutes West 643.5 feet, North 58 degrees West 825 feet and North 34 degrees 30 minutes West 330 feet.

"3. That the respondent, J. B. Keemer, is adjoining landowner and his lands are affected by this proceeding; that J. B Keemer, and wife, sold to John Henry Bullock and wife, Ophelia Bullock, a lot by deed dated October 31, 1956, registered in Book 461, page 249, Bertie County Public Registry, and said lot will be affected by the location of the said line.

"WHEREFORE, petitioners pray: That the location of the boundary line of petitioners' land be fixed as set out in the petition and pursuant to the provisions of Chapter 38 of the General Statutes of North Carolina; for all other and further relief."

No answer having been filed, the clerk, on August 1, 1961, entered an order which, after recitals, states: "the court further finds that the allegations of the petition are true and that the true and correct location of the line of petitioners' lands where it adjoins respondents is as set out in section 2 of the petition, and that the petitioners are entitled to the relief demanded in the petition." The clerk's order concludes as follows:

"THEREUPON, it is ORDERED, CONSIDERED AND ADJUDGED that the true and correct location of the line of the petitioners' lands where it adjoins the lands of the respondents is as follows:

"BEGINNING at a point in Guy's Hall Branch at the call reading 'South 85 degrees 30 minutes East 660 feet,' and running thence from Guy's Hall Branch North 85 degrees 30 minutes West 660 feet, North 82 degrees 30 minutes West 643.5 feet, North 58 degrees West 825 feet and North 34 degrees 30 minutes West 330 feet, and all of which is more particularly shown on Lot No. 5 of the Jacob Pruden land Division in Book RR, Page 42, Bertie County Public Registry.

"It is FURTHER ORDERED that a plat of Lot No. 5 of the Jacob Pruden Land Division be filed and recorded with this Judgment, showing the true location of said boundary line.

"It is FURTHER ORDERED that the petitioners recover the cost of this action of the respondents, the same to be taxed by the Clerk of this Court. Let the same be registered with plat in the office of the Register of Deeds of Bertie County, N. C."

On May 29, 1963, respondents, represented by counsel, filed with the clerk a paper entitled "MOTION TO VACATE ORDER AND DISMISS PETITION." On July 22, 1963, petitioners answered the allegations of respondents' said motion and moved that it be dismissed.

Respondents' (verified) motion of May 29, 1963, asserted, *inter alia,* that J. B. Keemer, within ten days after service of summons and petition on respondents, appeared in the clerk's office and made inquiry and was given certain information "about the nature and meaning of the proceeding." These allegations were denied by petitioners in their answer to respondents' said motion. The clerk, by order of July 22, 1963, on the ground "it may become necessary in the hearing for the clerk or his deputies to testify," was of opinion he was disqualified to hear respondents' said motion and ordered that "the motion be, and it is hereby, transferred to the Judge of the Superior Court of Bertie County to be heard at such time as the Court may determine."

On August 27, 1963, respondents made a supplemental motion, "BEFORE THE JUDGE," that an order issue directing the county surveyor to make certain surveys.

There appears in the record a "MOTION FOR CONTINUANCE," bearing date of September 3, 1963. It is noted that affidavits filed in connection with a motion by petitioners to dismiss this appeal disclose a controversy as to whether this motion was filed prior to September 6, 1963, the date on which Judge Parker entered judgment.

Judge Parker's judgment provides:

"This cause having been transferred by the Clerk of the Superior Court to the undersigned Judge of the Superior Court for hearing by order dated July 22, 1963, and the same having been set for hearing September 3, 1963, and counsel for respondents having failed to appear, but notwithstanding their failure to appear, the court has considered the motion of respondents, together with the petition filed in this cause and upon considering the same the court finds that a duly verified petition was filed in this cause July 20th, 1961; that summons was issued on said date and personally served upon the respondents by B. B. Joyner, Deputy Sheriff of Bertie County, July 20, 1961; that no answer was filed and on August 1, 1961, the Clerk of the Superior Court entered a judgment appearing of record, which judgment was duly

entered upon the records in the Superior Court of Bertie County; that the motion to vacate the same was filed the 29th day of May 1963, more than one year after the entry of the aforesaid judgment; the court further finds that defendants have failed to show reasonable or proper excuse for vacating said judgment and they have failed to show a meritorious defense to said action; the court further finds that the motion should be denied;

"THEREUPON, it is ORDERED, CONSIDERED, AND ADJUDGED that the motion to vacate the order heretofore entered in this cause by G. C. Spoolman, Clerk of the Superior Court, August 1, 1961, and dismiss the petition be, and the same is hereby, denied."

Respondents filed "SPECIFIC EXCEPTIONS" to said judgment and appealed.

*Pritchett & Cooke for petitioner appellees.*
*James R. Walker, Jr., Samuel S. Mitchell, Robert L. Harrell, Sr., and T. T. Clayton for respondent appellants.*

BOBBITT, J. The basic question is whether the clerk had jurisdiction to enter the purported default judgment of August 1, 1961. If not, said purported judgment is absolutely void and must be treated as a nullity. *Deans v. Deans,* 241 N.C. 1, 9-10, 84 S.E. 2d 321, and cases cited.

The clerk of the superior court has no common law or equitable jurisdiction. *McCauley v. McCauley,* 122 N.C. 288, 30 S.E. 344. The clerk is a court "of very limited jurisdiction — having only such jurisdiction as is given by statute." *Moore v. Moore,* 224 N.C. 552, 555, 31 S.E. 2d 690, and cases cited; *In re Dunn,* 239 N.C. 378, 383, 79 S.E. 2d 921; *Deans v. Deans, supra.* As stated by Seawell, J., in *Johnston County v. Ellis,* 226 N.C. 268, 279, 38 S.E. 2d 31: "The jurisdiction of the clerk of the Superior Court is statutory and limited, and can be exercised only with strict observance of the statute."

A special proceeding under G.S. 38-1 through G.S. 38-3 may be instituted by an owner of land *whose boundary lines are in dispute.* G.S. 38-1. "Title or ownership is not directly put in issue in a processioning proceeding." *Bumgarner v. Corpening,* 246 N.C. 40, 43, 97 S.E. 2d 427, and cases cited. The sole purpose of a processioning proceeding is to establish *the true location* of disputed boundary lines.

In determining the true location of a disputed boundary line, this legal principle is well settled: "What constitutes the line, is a matter

of law; where it is, is a matter of fact." *McCanless v. Ballard,* 222 N.C. 701, 703, 24 S.E. 2d 525; *Jenkins v. Trantham,* 244 N.C. 422, 426, 94 S.E. 2d 311.

"The default admits only the averments in the complaint, and if these are insufficient to warrant the plaintiff's recovery, no judgment can be given; as where it appears that the court has no jurisdiction or the facts do not constitute a cause of action." McIntosh, North Carolina Practice and Procedure § 634, p. 713; *Howze v. McCall,* 249 N.C. 250, 255, 106 S.E. 2d 236. Respondents' failure to answer (default) constituted an admission of the facts alleged in the petition. The question is whether these facts were sufficient to vest in the clerk jurisdiction to enter the purported default judgment of August 1, 1961.

Facts alleged in the petition and deemed admitted are: Petitioners own the described tract of land. Respondent Keemer is "adjoining landowner" and his lands "are affected by this proceeding"; and a lot purchased by respondents Bullock from Keemer "will be affected by the location of the said line."

Petitioners prayed that "the location of the boundary line" of their land "be fixed as set out in the petition." The petition contains no allegation as to what boundary line is in dispute. Indeed, there is no allegation that *any* boundary line is in dispute. Only disputed boundary lines are the subject of processioning proceedings. G.S. 38-1.

The burden of proof rests upon a petitioner to establish the true location of a disputed boundary line. *Plemmons v. Cutshall,* 234 N.C. 506, 67 S.E. 2d 501; *McCanless v. Ballard, supra.* It is equally true, under general rules applicable to pleadings and specifically under G.S. 38-3, that a petitioner must allege the true location of a disputed boundary line.

G.S. 38-3, in pertinent part, provides: "The owner shall file his petition under oath stating therein facts sufficient to constitute the location of such line as claimed by him and making defendants all adjoining owners whose interest may be affected by the location of said line. The clerk shall thereupon issue summons to the defendants as in other cases of special proceedings. *If the defendants fail to answer, judgment shall be given establishing the line according to petition.*" (Our italics). As under prior statutes relating to processioning proceedings (Chapter 48, The Code of 1883; *Forney v. Williamson,* 98 N.C. 329, 4 S.E. 483; *Euliss v. McAdams,* 101 N.C. 391, 7 S.E. 725), a strict observance of statutory provisions in all material respects is required.

The clerk's jurisdiction to enter a judgment by default in a processioning proceeding is based solely on the italicized sentence in the quoted portion of G.S. 38-3. In our view, and we so hold, a petition in

compliance with statutory requirements is a prerequisite to the clerk's jurisdiction to enter such default judgment.

There are eleven calls in petitioners' description of their land. Petitioners reversed four of these calls (tenth, ninth, eighth and seventh) and alleged these (reversed) calls constitute "the true and correct location of the line of petitioners' lands . . . as claimed by them."

G.S. 38-3 provides that petitioner allege "facts sufficient to constitute the location of such line as claimed by him." This provision requires that petitioner allege facts as to the location of the (disputed) line as claimed by him with sufficient definiteness that its location on the earth's surface may be determined from petitioner's description thereof.

What are petitioners' lines is determinable as a matter of law from the calls in the description of their lands. Where these lines are located on the earth's surface is determinable as a matter of fact. The petition is deficient in that it does not allege facts sufficient to identify *the location* of any (disputed) line "as claimed" by petitioners. While our statutory provisions control decision, the result appears to be in substantial accord with decisions in other jurisdictions. 12 Am. Jur. 2d, Boundaries § 97; 11 C.J.S., Boundaries § 103.

What lines, if any, are disputed? Where are the disputed lines, if any, located on the earth's surface? Petitioners' allegations provide no answer. (While not considered material, it is noted that petitioners did not attach to the petition a plat purporting to show Lot No. 5 of the Jacob Pruden land division.) The petition is fatally defective and insufficient to confer jurisdiction on the clerk. Hence, the purported default judgment of August 1, 1961, is absolutely void and must be treated as a nullity.

Having reached the conclusion the purported default judgment of August 1, 1961, is absolutely void and must be treated as a nullity, consideration of other questions raised by the appeal and discussed in the briefs is unnecessary.

Reversed.