IN RE: BOUNDARY DISPUTE BETWEEN LOTS 97 AND 98 OF THE C.M. BOST ESTATE, ANDERSON/GRIFFIN PROPERTIES, LLC, OWNER OF LOT 97, PETITIONER v. R.L. WALLACE CONSTRUCTION COMPANY, INC., AND J.M. BARRETT AND WIFE, SHEREE T. BARRETT, OWNERS OF LOT 98, RESPONDENTS

No. COA08-1453

(Filed 1 September 2009)

**1. Real Property— boundary line dispute—sufficiency of findings of fact**

The trial court did not err in a case arising out of a dispute regarding the location of a boundary line by its findings of fact even though petitioner contends they were based upon mere hypothetical evidence or conjecture because the trial court properly used its authority as trier of fact to determine which evidence to find credible.

**2. Real Property— boundary line dispute—sufficiency of conclusions of law**

The trial court did not err in a case arising out of a dispute regarding the location of a boundary line by its conclusions of law where the trial court properly concluded that existing monuments, custom, usage, courses, and distances all supported respondents' line as representing the true boundary between the lots.

Appeal by petitioner from judgment entered 8 November 2007 by Judge Susan C. Taylor in Cabarrus County Superior Court. Heard in the Court of Appeals 21 May 2009.

*Richard M. Koch for petitioner.*

*Ferguson, Scarbrough, Hayes, Hawkins & DeMay, P.A., by James E. Scarbrough, for respondent Wallace.*

*Hartsell & Williams, P.A., by Christy E. Wilhelm, for respondents Barrett.*

ELMORE, Judge.

This case arose as a result of a dispute regarding the location of the boundary line that runs between land owned by Anderson/Griffin Properties (petitioner) and R.L. Wallace Construction Company, J. M. Barrett, and Sheree T. Barrett (together, respondents). Petitioner appeals from the judgment entered in a bench trial by the

Superior Court of Cabarrus County. The trial court adjudged the line as proposed by respondents to be the true boundary line between petitioner's and respondents' properties. For the reasons herein, we affirm.

I

Petitioner owns lot 97 and respondents own lot 98 of the C. M. Bost Estate (Bost Estate) located near Midland in Cabarrus County. The Bost Estate consists of a number of lots, many of which are located in the tract of land that falls between Bethel School Road to the north, U.S. Hwy 601 to the east, and Norfolk Southern Railway line to the south. Respondent Wallace's predecessor in interest acquired title to lot 98 in September 1973. By mesne conveyances, respondent Barrett acquired title to the front portion of Lot 98 of the Bost Estate. This portion consists of 1.25 acres of land and adjoins lot 97 at its intersection with Hwy 601. In June 2000, petitioner acquired title to a portion of lot 97 of the Bost Estate. The deeds conveying title to petitioner contain a metes and bounds description that describes a line "[b]eginning at an iron stake in the west edge of the Cabarrus-Monroe Highway, front corner of Lot Nos. 97 and 95 [sic] and runs thence with the dividing line of Lot Nos. 97 and 98, N. 70-30 W. 1470 feet to an iron stake on the north bank of the creek, corner of Lot Nos. 98 and 104." The location of this line is the subject of this appeal.

The disputed boundary is the southern boundary of lot 97 and northern boundary of lot 98. The cause of the dispute is a mathematical error contained in the Bost Estate map. As a result of this error, there is not enough land in the Bost Estate property to satisfy all the distances that are shown on the 1945 Bost Estate map from the intersection of Bethel School Road and Highway 601 to the southernmost point on the map. This so-called "floating error" could lead to a margin of error of up to 50 feet in the distances shown on the Bost Estate map. The location of the boundary as contended by petitioner is referred to herein as the Griffin line, and the location of the boundary line as contended by respondents is referred to herein as the Wallace line. The Griffin line lies further south than the Wallace line, and runs through two buildings that have been in existence since 1973.

The subject property has been surveyed multiple times since 1945. The earliest available map of the Bost Estate is a survey map that was completed in 1945 by Guy Fisher. According to this map, which is recorded in Map Book 7, Page 23, Cabarrus County Registry,

IN RE BOUNDARY DISPUTE OF BOST ESTATE

[199 N.C. App. 522 (2009)]

iron axles or stakes mark the corners of lot 98. When respondent Wallace's predecessor in interest acquired title to lot 98 in September 1973, Jack Ritchie performed a survey of the property and determined the Bost Estate map to represent the true boundary between lots 97 and 98. Ritchie was later discovered not to be a licensed land surveyor. However, in his survey, Ritchie relied on Fisher's corners as being located by the iron axles. In 1990, when respondent Wallace sold some property to respondent Barrett, Jim Craddock performed a survey and marked the boundary line in question. Craddock did another survey in 1999. Petitioner hired surveyor Carroll Rushing to locate the common front corner and common boundary line of lots 97 and 98. Rushing performed a survey of the disputed boundary line in 2000 before this litigation began, and Rushing re-did that survey in 2002 based on additional discoveries toward the southern portion of the lot. Surveyor Greg Flowe, who was hired by respondent Wallace, performed a survey of the land in November 2000. Flowe used the iron axles and stakes as corners of the property and monuments to the south of the property to determine the location of the boundary line. Flowe's survey stated that the original Ritchie survey appeared to be correct and his calculations put the disputed boundary line within a foot of the boundary on the Ritchie survey. Respondent Wallace also hired another professional land surveyor, Thomas Harris, to study the existing surveys and research the location of the boundary line between lots 97 and 98. Harris found axle irons that marked the boundary as the Wallace line. He also found old hack marks on the trees growing along the Wallace line. Such hack marks are typically used to establish a property line because they are more effective than iron stakes in the ground, which can be easily pulled up and moved over.

In December 2000, petitioner filed an action for a processioning proceeding pursuant to Chapter 38 of the North Carolina General Statutes to determine the location of the true boundary line between lots 97 and 98. N.C. Gen. Stat. § 38-3(a) (1999). The Clerk of Superior Court held a hearing on the matter and then commissioned Mel G. Thompson & Associates (Thompson) to conduct a survey of the disputed property. A Thompson employee, surveyor Robert Spidel, who was deceased by the time of the trial, performed the survey. The Thompson survey was completed on 3 February 2003 and found the Griffin line to be the correct boundary between the two lots. Mel Thompson supervised Spidel's work and testified as to the methodology used by Spidel. The hierarchy of evidence that surveyors typically use to draw a survey map gives artificial or man-made monuments

precedence over courses and distances. However, Spidel used the courses and distances methodology to determine the corners of the property and the boundary between lots 97 and 98 because he thought this methodology was more reliable in this case.

Based on the results of the Thompson survey, the Clerk of Superior Court entered an order in support of petitioner's contention. Respondents appealed that order and the matter was heard de novo by the trial court on 4 September 2007. Because all parties waived a jury trial, the trial judge heard witness testimony and reviewed all evidence. On 8 November 2007, the court entered an eight-page judgment that contained fifty-four findings of fact and six conclusions of law. The court found that the preponderance of evidence supported the Wallace line as the true common boundary between lots 97 and 98 of the Bost Estate. Petitioner now appeals that judgment.

## II

[1] Petitioner argues that the trial court's findings of fact are based upon mere hypothetical evidence or conjecture. Specifically, petitioner challenges the following findings of fact:

26. The front axle iron and the rear axle iron marking the corners of the Wallace line are old yet similar in age and appearance and were probably placed in the ground by the same person at the same time.

27. The axle irons are likely from old equipment such as farm equipment.

28. During WW II iron was scarce and surveyors and property owners sometimes used old parts of equipment to serve as boundary monuments.

29. Surveyors Craddock and Flowe determined that the Wallace line was the true boundary line of lots 97 and 98 and that the axle irons were the front and rear common corners [of] lots 97 and 98.

* * *

33. Using the iron on the east edge of Muddy Creek as a control corner or starting point and proceeding in a northerly direction with the courses and distances and irons in line described on the C. M. Bost Estate map recorded in Map Book 7, Page 24, the axle iron on the west side of Hwy 601 contended by Wallace to be the front common corner of lots 97 and 98, is only 4.72 feet from the

location called for by the C. M. Bost Estate map. This is within an excellent degree of tolerance considering the fact that the C. M. Bost Estate was subdivided and surveyed in 1945.

34. The front axle iron and rear axle iron are also supported and confirmed as being the true front and rear common corners of lots 97 and 98 by (a) calculating from existing irons to the north along Hwy 601 and to the west, (b) calculating from existing irons to the north along Bethel Road and along the rear lot lines of the C. M. Bost Estate lots, and (c) calculating from existing irons to the south at Muddy Creek and the Clontz land and the railroad line.

35. Irons located to the north, south, and west of lots 97 and 98 support and confirm the contention that said front and rear axle irons are the true front and rear common corners of lots 97 and 98.

36. The Norfo[l]k Southern Railroad line has existed to the south of lots 97 and 98 for over 100 years and is shown on the map of the C. M. Bost Estate.

37. An iron in the northern right of way line of Norfo[l]k Southern Railroad is a distance of 964.9 feet from the front common corner of lots 97 and 98.

38. Surveyor Craddock measured a distance of 963.33 feet from the iron in the northern right of way line of the Norfo[l]k Southern Railroad to the front axle iron. Surveyor Flowe measured the same distance as being 963.88 feet to the front axle.

39. Based on the distance to the northern right of way line of Norfo[l]k Southern Railroad at Hwy 601, the front common corner between the parties as contended by Wallace is located within a few feet of where it should be located.

* * *

45. The existing rear axle iron contended by Wallace as the rear common corner of the parties is located on the north side of Muddy Creek. The C. M. Bost Estate map calls for an iron at the corner to be located on the north side of Muddy Creek. The existing axle iron is on the inside bend in the creek making it unlikely that the creek eroded the bank causing the iron to be moved over the years. Water in a creek erodes on the outside of a creek bend where the water flows faster. Accretion, not erosion, usually

occurs on the inside of a bend in the creek because the water flow is slower.

46. Axle irons are sometimes referred to simply as irons by surveyors.

47. The Griffin line was not marked by monuments of any kind at the time he purchased it.

48. The Wallace line is well marked by old cuts on trees, old axle irons at the corners, and several irons in the line between the corners.

In a bench trial, the standard of review on appeal is "whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Shear v. Stevens Bldg. Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992). "If the court's factual findings are supported by competent evidence, they are conclusive on appeal, even though there is evidence to the contrary." *Lagies v. Myers*, 142 N.C. App. 239, 246, 542 S.E.2d 336, 341 (2001). In evaluating the credibility of witnesses, the trial judge determines "the weight to be given their testimony and the reasonable inferences to be drawn therefrom." *Terry's Floor Fashions, Inc. v. Crown Gen. Contr'rs, Inc.*, 184 N.C. App. 1, 10, 645 S.E.2d 810, 816 (2007) (citation and quotations omitted). "If different inferences may be drawn from the evidence, [the trial judge] determines which inferences shall be drawn and which shall be rejected." *Id.* (alteration in original; citation and quotations omitted). However, the appellate court reviews the trial court's conclusions of law *de novo*. *Kraft v. Town of Mt. Olive*, 183 N.C. App. 415, 418, 645 S.E.2d 132, 135 (2007).

The purpose of a processioning proceeding is "to establish the true location of disputed boundary lines." *Pruden v. Keemer*, 262 N.C. 212, 216, 136 S.E.2d 604, 607 (1964) (emphasis removed). In such a proceeding, what constitutes the true boundary line is a matter of law and where it is located is a matter of fact. *Smothers v. Schlosser*, 2 N.C. App. 272, 274, 163 S.E.2d 127, 129 (1968). While the question of what constitutes the true boundary between two parcels of land is a question of law for the court, where the boundary is located on the ground is a question of fact. *Cutts v. Casey*, 271 N.C. 165, 167-68, 155 S.E.2d 519, 521 (1967). Petitioner carries the burden of proof to show the true location of the disputed boundary line. *Plemmons v. Cutshall*, 234 N.C. 506, 510, 67 S.E.2d 501, 504 (1951). However, if a petitioner fails to show "by the greater weight of evidence the loca-

tion of the true dividing line at a point more favorable to them than the line as contended by the defendants," then the fact finder must resolve the issue of location of the boundary line "in accord with the contentions of the defendants." *Cornelison v. Hammond*, 225 N.C. 535, 536-37, 35 S.E.2d 633, 634 (1945).

In the case *sub judice*, both parties waived a jury trial and designated the trial judge as the trier of fact. As a trier of fact, the judge was allowed to consider evidence and witness testimony to ascertain the location of the boundary. *Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968) (during a bench trial, "[t]he trial judge becomes both judge and juror, and it is his duty to consider and weigh all the competent evidence before him"). Based on the testimony of Craddock, Wallace, Harris, and Flowe, the trial court entered findings of fact 26 through 29, 33 through 40, and 45 through 48. Craddock, Flowe, and Harris, all licensed and experienced land surveyors, provided testimony that the Wallace line is marked by axle irons and also by markings in the trees. Craddock found axle irons that mark the original corners of the Bost estate, including the front common corner of lots 97 and 98. By using a surveying methodology that was slightly different, Flowe confirmed the location of the front corner. Flowe worked from the railroad track and proceeded north along Highway 601. Surveyor Harris checked the work of Craddock and Flowe, and determined the Wallace line as the true boundary. Respondent Wallace also testified that old axle irons marked the common front corner between his property and that owned by petitioner. Respondent Wallace and petitioner's predecessor in interest recognized this as the true common front corner of the two lots.

On the other hand, petitioner's surveyor, Carroll Rushing, testified that the Griffin line was the true boundary between the two lots. However, Rushing "built this line" by starting at a point to the north of Hwy 601 and proceeding with the distances of the other lots until he "established" the front common corner of lots 97 and 98. Furthermore, Rushing also testified that he was hired to "reestablish" the line between lots 97 and 98. The trial court found that Rushing "tried to restore footage to petitioner's lot 97," rather than honor the original axle irons that marked the boundary of lots 97 and 98. That is, Rushing did not attempt to locate the original boundary line; he simply tried to restore the shortage that arose due to the floating error by establishing a new line. The court also found this practice to be in conflict with established land survey practices, where surveyors try to retrace old boundaries by "walking in the

shoes of the original surveyor" and "following in the tracks of the original surveyor."

We hold that there was competent evidence to support the trial court's findings of fact 26 through 29, 33 through 40, and 45 through 48. Although petitioner produced evidence that disagreed with the evidence presented by respondents, the trial court correctly used its authority as a trier of fact to determine which evidence to find credible. Therefore, as a finder of fact, the trial judge was allowed to find that the location of the boundary between lots 97 and 98 was the Wallace line.

### III

[2] Petitioner next makes a broad argument that the trial court's conclusions of law are not supported by its findings of fact. We disagree. The trial court considered competent and substantial evidence to enter its findings of fact 26 through 29, 33 through 40, and 45 through 48. We hold that these findings of fact support the trial court's conclusions of law. The trial court did not err in concluding that the preponderance of evidence supports the Wallace line as being the true common boundary between lots 97 and 98 of the Bost Estate. The trial court also correctly concluded that existing monuments, custom and usage, and courses and distances all support the Wallace line as representing the true boundary line between the lots.

Petitioner also argues that the trial court's following conclusion of law does not support a result in favor of respondents: "6. In locating a boundary line shown on a map, the surveyor's job is to walk in the shoes of the original surveyor rather than 're-establish' the line or 'restore' footage to a lot." Petitioner claims that only his witnesses (surveyors Rushing and Spidel) walked in the shoes of the original surveyor, and that respondents' surveyors relied on incorrect maps. In support of its claim, petitioner states that Rushing did an "overlay" of the original Bost Estate map. Petitioner does not explain how an overlay supports his argument that Rushing "walked in the shoes" of the original surveyor. The trial court's conclusion of law 6 relates to its finding that, by retracing the original survey, respondents' surveyors followed the correct procedure. In effect, petitioner is challenging the trial court's findings that Craddock and Flowe located and used old axle irons to determine the true front and rear corners of lots 97 and 98 (findings of fact 33 through 39). The trial court heard witness testimony to determine that respondents' surveyors correctly viewed their job as retracing the original survey to determine the true

boundary. Craddock testified that, when retracing a survey, the goal is to find the point on the ground where the original surveyor placed the axle iron. Harris testified that his job was not to reestablish a corner, but to find old axle irons to verify where the original corner would be. Since the trial court's conclusions of law are supported by valid findings of fact, we refuse to disturb them on appeal.

Petitioner also contends that the hierarchy of evidence followed by the trial court to determine the true common boundary is not conclusive. Information relating to this hierarchy is not a conclusion of law made by the court, and instead is entered as a finding of fact. Specifically, the court's finding of fact 16 states:

16. Due to the error, to locate accurately the boundaries and corners of the original lots of the C. M. Bost Estate, the better practice is to rely less on the courses and distances shown on the maps of the C. M. Bost Estate and more on the natural and artificial monuments and custom and usage of the property owners.

We cannot agree with petitioner's contention. There was adequate evidence to support the court's finding regarding this hierarchy. This evidence consisted of the testimony presented by licensed land surveyors: Thompson, Craddock, and Flowe. As the trier of fact, the trial court properly evaluated the testimony offered by the witnesses and drew reasonable inferences from this testimony. Thompson explained that, within the hierarchy of evidence, natural monuments were most important, followed by artificial or man-made monuments, then marked lines, and finally courses and distances. Flow used monuments (iron axles) as the corners of the property because they were reliable. Similarly, Craddock's multiple surveys of the boundary were based on the Ritchie and Fisher corners, as marked on the lots by iron axles.

Furthermore, North Carolina law provides adequate support for the court's finding that natural and artificial monuments control course and distances. In deciding the location of a disputed boundary line, "the general rule is that natural objects and artificial monuments control courses and distances." *Newkirk v. Porter*, 237 N.C. 115, 120, 74 S.E.2d 235, 239 (1953); *see also Trust Co. v. Miller*, 243 N.C. 1, 9, 89 S.E.2d 765, 771 (1955). Therefore, the trial court's findings of fact adequately support its conclusions of law and we hold that petitioner's arguments lack merit.

IV

We hold that the trial court made its findings of fact based on competent evidence. These findings support the court's conclusions of law relating to existing monuments, custom and usage, and courses and distances. The court also correctly concluded that a preponderance of the evidence supports the Wallace line as the true boundary between lots 97 and 98 of the Bost Estate. The trial court correctly adjudged and decreed that the true boundary line between properties owned by petitioner and respondents is the line proposed by respondents.

Affirmed.

Judges BRYANT and CALABRIA concur.