MISS CORA PERKINS v. F. L. CLARKE AND WIFE, MRS. F. L. CLARKE.

(Filed 3 November, 1954.)

**1. Boundaries § 6—**

Where all the evidence shows that the plaintiff is the owner and in possession of certain lands and that defendant is the owner and in possession of contiguous lands, and the only dispute between the parties is the location of the true dividing line between the respective tracts, title is not in dispute, and the court correctly refuses to submit an issue of title tendered by one of the parties.

**2. Boundaries § 5f—**

Where, in a processioning proceeding, there is no exception to the court's order appointing a surveyor to make a survey of the contentions of the parties, exceptions to the testimony of the surveyor because he set out on his map the disputed line as contended for by plaintiff as well as that contended for by defendant, is untenable.

**3. Boundaries § 5d—**

It is competent for witnesses to testify from their own knowledge as to the location of natural objects called for in the deeds admitted in evidence. The distinction is pointed out between testimony as to personal knowledge and testimony of declarations made by others, which declarations must be made *ante litem motam* by disinterested parties, since deceased.

**4. Evidence § 19—**

Testimony of declarations made by a witness to others, which declarations are in conflict with the testimony of the witness upon the trial, is competent for the sole purpose of impeaching the witness' credibility, even though such testimony would otherwise be incompetent as hearsay.

**5. Appeal and Error § 39e—**

The admission of technically incompetent testimony as to a collateral matter cannot justify a new trial when it is apparent that it could not have influenced the jury in its decision on the issue in dispute.

DEFENDANTS' appeal from *Fountain, S. J.,* April-May Term, 1954, CALDWELL.

This was a special proceeding brought before the clerk under the provisions of Chapter 38 of the General Statutes to establish a disputed boundary line between the lands of the parties. The plaintiff alleged in her petition that she was the owner of a certain described tract of land in Caldwell County; that there was a dispute as to the location of the boundary line between her lands and those of the defendant, F. L. Clarke. She alleged the true dividing line is as follows:

"Beginning at a stake on the west side of Rocky Branch, formerly the location of a beech tree, and above the forks of Rocky Branch, runs North 80 degrees East 15 poles; then North 43 degrees East 18 poles; North 62 degrees East 12 poles; North 82 degrees East 30 poles; North 65 degrees East 29 poles; South 85 degrees East 15 poles; South 65 degrees East 21 poles; North 75 degrees East 6 poles; North 35 degrees East 9 poles; North 65 degrees East 69 poles; South 53 degrees East 24 poles; South 75 degrees East 45 poles; to a mahogany."

The defendants answered, denying the plaintiff owned the land described in the petition and alleging "the true dividing line between the defendants and the petitioner is as follows:

"Beginning on a beech, William Carroll's corner near Rock House Branch; then running south 84½ degrees East 80 poles to a dogwood on top of ridge marked on the southeast side with three hacks; thence running East course with ridge to a rock near the spring 100 poles in all; thence South 40 degrees East 13 poles to a stake; thence East 30 poles to a mahogany gone now an iron stake on the West bank of Wilson Creek."

The defendants having denied plaintiff's title, the case was transferred to the civil issue docket. Plaintiff, with leave of the court, filed an

amended petition in which she stated the true boundary line between the lands of the parties is:

"Beginning at a beech in the forks of Rocky Branch and runs North 86 degrees East 260 poles to a mahogany tree, or, conversely, beginning at a mahogany tree and running South 86 degrees West 260 poles to a beech on Rocky Branch."

The defendants filed an answer to the amended petition, alleging the plaintiff had filed three different petitions, each alleging the dividing line at a different location. The defendants repeated their contentions as to the boundary line, except "Rock Hill" branch was substituted in the second answer for "Rock House" Branch in the first. It was stipulated the lands of the parties were derived from the same source, J. Thad Perkins.

The plaintiff introduced the following deeds:

(1) Deed dated 20 September, 1921, from J. Thad Perkins to Cora A. Perkins and Ernest L. Perkins. The pertinent call in this deed is: "Adjoining the lands of Robert H. Perkins, Samuel O. Perkins and Frank E. Perkins on the South."

(2) Deed dated 9 March, 1932, from Ernest L. Perkins to Cora Perkins, conveying his interest in the land described in deed No. 1.

(3) Deed dated 20 September, 1921, from J. Thad Perkins, to Robert H. Perkins, Samuel O. Perkins and Frank E. Perkins. The pertinent call in this deed is: "Beginning at the forks of Rocky Branch, William Carroll's corner in the Micheaux line, running an easterly course to a mahogany on Wilson's Creek."

(4) Deed dated 12 June, 1946, from Frank E. Perkins, Samuel O. Perkins and Robert H. Perkins and wives, to F. L. Clarke. This deed contains the same description as No. 3, and added: "The tract of land includes all the land owned by J. Thad Perkins south of Cora A. Perkins and Ernest L. Perkins."

The court appointed a surveyor with directions to survey the contentions of the parties, make the required number of plats, and report to the court. The surveyor made his survey, filed a map showing a red line from Point No. 1 to Point No. 2 as contended for by the plaintiff, and a purple line from Purple A to Purple B as contended for by the defendants. Mr. Isbell, the surveyor, testified in substance: He went to the fork of a branch shown to him by Miss Cora Perkins and found a branch there; "it was hard to determine where the fork is." The deed reads: "Beginning at the forks of Rocky Branch, William Carroll's corner in the Micheaux line." That is shown as Point No. 1 to Point No. 2 on the red line in his survey. He found the mahogany tree; it was located on the west bank of Wilson's Creek. "I ran the first call from Point 1 as shown on the map. That is shown on Point 1 to Point 2 on the red line.

At Point 2 on the red line in my survey, I found a mahogany tree. It was located on the west bank of Wilson's Creek . . . After close examination it showed to have two marks or bruises on the side next to the river."

The map shows a red line from Red 1 to Red 2 as running North 86 degrees East 260 poles. On cross-examination the surveyor testified: "In running the line from A to B, I followed the directions given me by Mr. Klutz. I found some marks along this line. The branch could be observed by anyone who will go there; and surveying from A on the map to B, I found marked trees on the ridge. I surveyed what was their (the defendants') contentions that were handed me and the line hit those marks. There is a line marked practically all the way across there." On re-direct examination, he testified that in his opinion the marks on the line from A to B had been made within two years of that time. The survey was made in October, 1951.

A number of witnesses for the plaintiff testified that they knew the location of the Micheaux Line and the forks of Rocky Branch in that line, and that the location was Red 2 on the map. Other witnesses testified as to the mahogany on Wilson's Creek, Point 1 on the map, including evidence that there was a beech tree at Red 1, but that it died and is not there now.

There was evidence that J. Thad Perkins died in 1932 and that Cora A. Perkins and Ernest L. Perkins had been in possession of the land north of the disputed line since 1921. There was evidence tending to show that the line as claimed by defendants ran between Cora's house and the barn, and between the house and the spring.

The summons was introduced, showing that this action was begun 22 May, 1951.

The defendant offered the following deeds:

(1) Deed dated 20 September, 1921, from J. Thad Perkins to Robert H. Perkins, Samuel O. Perkins, and Frank E. Perkins (the same as plaintiff's deed No. 3).

(2) Deed dated 12 June, 1946, from Frank E. Perkins and others to F. L. Clarke (the same as plaintiff's No. 4).

(3) Grant No. 5189 from the State of North Carolina to Alexander Perkins for "fifty acres of land on Rocky Branch on John's River, beginning at a post oak, fallen down opposite the bend of John's River, which being the southwest corner of said Perkins-Sherrill land on the bank of the river and on John Perkins line, and runs west with his line 56 poles to a beech on Rocky Branch, it being James Carroll's corner marked by Colonel William Davenport; then north with Carroll's line 160 poles to a pine, his corner in a line of his old Davenport survey; then east 56 poles to a stake in the said Carroll's line; then south with a line of Perkins-

Sherrill tract 160 poles to the beginning, entered the 3rd day of December, 1824, . . . Dated 3rd January 1926."

R. A. Kent testified that he had been a surveyor for 30 years, having studied at State College, that he had known the Perkins place for 45 years, that he had surveyed the line A to B and found a marked line, a dozen, maybe 15 or 20 marked trees on the line. In his opinion the marks were 25-30 years old.

Other evidence tending to establish the line as contended for by the defendants, including evidence that there had been a mahogany at or near Purple B, but that it had been washed away by flood waters. Defendants' evidence also tended to show a large beech located at Purple A.

The defendants tendered an issue as follows: "Is the plaintiff the owner of the lands described in the petition as owned by the plaintiff?" The court refused to submit the issue, and the defendants excepted. The court submitted the following issue: "1. Where is the true dividing line between the lands of the plaintiff and the lands of the defendants?" The jury answered the issue "One to Two." The court entered judgment in accordance with the verdict, from which the defendants appealed.

*W. H. Strickland and Proctor & Dameron for plaintiff, appellee.*
*G. W. Klutz, A. R. Crisp, and Hal B. Adams for defendants, appellants.*

HIGGINS, J. The evidence, both record and parol, discloses that J. Thad Perkins made deeds to his children on 20 September, 1921, conveying the southern portion of his farm to his sons, Robert H., Samuel O., and Frank E. Perkins. The first call in the description of this deed is the line in controversy: "Beginning at the forks of Rocky Branch, William Carroll's corner in the Micheaux line, running an easterly course to a mahogany tree on Wilson's Creek." This tract of land with the same calls was conveyed to the defendant, F. L. Clarke, on 19 January, 1946, by Robert H., Samuel O., and Frank E. Perkins.

On 20 September, 1921, J. Thad Perkins conveyed the northern portion of his farm to Cora A. Perkins, an unmarried daughter who is the plaintiff in this action, and to Ernest L. Perkins, an unmarried son. This tract contained the J. Thad Perkins home. This deed does not contain specific calls, but the description is as follows:

"Adjoining the lands of Robert H. Perkins, Samuel O. Perkins, and Frank E. Perkins on the South, George T. Perkins and wife on the North. Bounded upon the East by the A. W. Perkins tract; on the North by George T. Perkins and wife; and on the West by John Perry and others; and on the South by Robert H. Perkins, Samuel O. Perkins and Frank E. Perkins. This tract of land included all the land owned by J. Thad Perkins, lying on Wilson's Creek between George T. Perkins and wife

tract on the North, and the Robert H. Perkins, Samuel O. Perkins and Frank E. Perkins on the South."

On 9 March, 1932, Ernest L. Perkins conveyed his interest in the above described lands to Cora Perkins.

The defendants' answer sets up a dividing line between the lands of the parties. It is apparent, therefore, that the southern line of the Cora Perkins land and the northern line of the Clarke land are one and the same, and consequently the line in dispute.

Since the location of the line settles the dispute, the court, therefore, properly refused to submit the issue of title tendered by the defendants. A similar question was before this Court in the case of *Clark v. Dill,* 208 N.C. 421, 181 S.E. 281, and we quote from *Chief Justice Stacy's* opinion: "Upon the trial the defendant tendered issues of title as well as of boundary, and excepted to the refusal of the court to submit the former. The merit in appellant's exception is dissipated by the following statement in the case on appeal: 'From the testimony of both plaintiff and defendant, the title to the J. H. Dill land was never in dispute and the title to the Clark land was not brought into dispute except as to the question of where the true line should run between them.' The case was tried purely as a proceeding to establish the boundary line between the land admittedly occupied by the plaintiff and the adjoining land admittedly occupied by the defendant. It is provided by C.S. 362 that the 'occupation of land constitutes sufficient ownership for the purposes of this chapter.' *Williams v. Hughes,* 124 N.C. 3, 32 S.E. 325."

The deeds offered by the parties show the plaintiff is the owner, and all the evidence shows she is in possession of the lands immediately north of the defendants' northern boundary line; that the defendant F. L. Clarke is the owner and in possession of the lands immediately south of that line is likewise shown by all the evidence. The true location of the boundary line, therefore, is the question in dispute.

The map filed with the record shows the red line from Red 1, the forks of Rocky Branch, north 86 degrees east 260 poles to a mahogany on Wilson Creek, and Red 2 is a straight line. This represents plaintiff's contentions. The map shows the purple line beginning at Purple A, a large beech on Rocky Branch, running south 76 degrees east 94 poles to a dogwood, north 88½ degrees east 7 poles; south 75 degrees east 10 poles; south 55 degrees east 10 poles; south 82 degrees east 14 poles to a stone and spring; south 212 degrees east 12½ poles; north 82½ degrees east 33 poles to a bridge and stake on Wilson's Creek. This line represents defendants' contentions.

Exceptions were taken to the testimony of the surveyor because he surveyed and set out on his map the disputed line as contended for by the plaintiff. On cross-examination he also testified that he surveyed and

set out on the map the defendants' contentions. The court's order directed the surveyor to survey the contentions of the parties and there was no exception to that order.

One hundred three exceptions were taken during the trial. Sixty-nine assignments of error are discussed in the brief. Many of the exceptions were taken to the testimony of witnesses who stated that they knew, and had known for many years the location of objects called for in the deeds, such as the forks of Rocky Branch, the Carroll's corner, the Micheaux line, the mahogany on Wilson's Creek; and some of the witnesses related these objects to the points on the surveyor's map. This evidence was clearly competent. The witnesses were testifying from their own knowledge. Each testified that he knew the location of the objects about which he testified. Evidence from personal knowledge is not to be confused with evidence of declarations made by others. In the latter case, in order to make the declarations competent it would be necessary to show the declarations were made *ante litem motam* by a disinterested party, since deceased. The distinction is set forth in *Maynard v. Holder,* 219 N.C. 470, 472, 14 S.E. 2d 415.

Defendants' assignments of error Nos. 66, 75, and 85 relate to the admission of evidence for the limited purpose of impeaching the testimony of Ernest L. Perkins, a witness for the plaintiff who had testified that the red line between Red 1 and Red 2 was the correct dividing line. He was then asked on cross-examination if he had not made the statement in the presence of a number of witnesses to the effect he had pointed out to the defendant or his son a different line, at or near purple line A to B as the correct line. This Perkins denied. Witnesses were called by the defendants to testify that they had heard Perkins make the statements which he had denied making. This evidence was admitted for the purpose of impeachment only, and the jury was instructed not to consider it as substantive evidence. Undoubtedly, the ruling of the court was correct. Proof of what Perkins said in the hearing of others would violate the hearsay rule and could be admitted only under the exception which admits such hearsay evidence for the purpose of impeachment. In the case of *S. v. Wellmon,* 222 N.C. 215, 217, 22 S.E. 2d 437, the Court said : "It is well settled that the credit of a witness may be impeached by proof that he has made representations inconsistent with his present testimony." And in the case of *Pate v. Steamboat Co.,* 148 N.C. 571, 62 S.E. 614, this Court said : "Of course the declarations of the boathand made after their occurrence are incompetent for the purpose of proving the condition of the bateau, *Southerland v. R. R.,* 106 N.C. 100, but having been examined by the defendant as a witness as to the condition of the bateau, it was competent to impeach or contradict his evidence on that point by his

declarations on that subject to Glover. His Honor properly confined the scope and effect of the question to 'impeaching evidence.' "

A witness for plaintiff was asked as to the condition of Miss Cora's health. The question was objected to by the defendants, overruled, and the following answer given: "Her health has been failing right considerably for ten years and she can't hardly hear at all; we almost have to squall to get her to hear what we are saying and she can't understand a radio at all, and she has had her eyes examined twice in the last year and the doctor told her she had double cataracts and there is nothing they could do for her. She is about blind. She can't read her own letters. She sleeps very little at night." Obviously, the question was asked for the purpose of explaining the plaintiff's failure to take the stand and testify. The answer of the witness perhaps went further than was proper for that purpose, and perhaps further than was contemplated by the question. The defendant made no motion to strike. At any rate, in view of the rather compelling evidence disclosed by the record, the evidence objected to could not have influenced the jury in its decision on a clear cut question as to the location of the boundary line.

We have examined the other exceptions and assignments of error, including those taken to the charge. They are without substantial merit. The issue was one of fact. Much testimony was offered by both parties. Its probative force was for the jury. No reason appears why the verdict should be disturbed.

No error.