GLADYS L. COLEY v. MORRIS TELEPHONE COMPANY,
INCORPORATED.

(Filed 6 July, 1966.)

**1. Boundaries § 7—**

The sole purpose of a processioning proceeding is to establish the true
location of a disputed boundary line; what constitutes the line is a mat-
ter of law, where it is is a matter of fact.

**2. Same—**

The burden of proof rests upon petitioner in a processioning proceeding
to establish the true location of the disputed boundary line, and if pe-
titioner is unable to show by the greater weight of evidence the location
of the line at a point more favorable to him, the jury should answer the
issue in accord with the contention of defendants.

**3. Boundaries § 5—**

A description contained in a junior conveyance cannot be used to locate
the lines called for in a senior conveyance.

**4. Same—**

A petitioner in processioning proceedings is not entitled to offer in evi-
dence documents and testimony tending to establish his corner as a corner
in a prior deed to contiguous land when there is no evidence of any con-
veyance to or from the grantee in the prior deed, and thus the prior deed
is not established as constituting a link in respondent's chain of title, and
the location of the crucial corner in the description in the prior deed is
not established by competent evidence.

MOORE, J., not sitting.

APPEAL by respondent from *Latham, Special Judge,* November
1965 Civil Session of ORANGE.

This special (processioning) proceeding was instituted April 29,
1964, under G.S. 38-1 *et seq.,* to establish the location of the north-
south and east-west dividing lines of adjoining lands owned in fee
simple by petitioner and respondent.

The lands of petitioner and respondent front on the south side
of King Street, Hillsborough, North Carolina. Respondent's land ex-
tends south from King Street between (approximately) parallel
lines. It is bounded on the east and on the south by lands of pe-
titioner. The west line of petitioner's land is a common line with
the east line of respondent's land. The south line of respondent's
land coincides with a line of petitioner's land. A map made by Wil-
liam B. Dozier, Court Surveyor, showing the contentions of the
parties, was in evidence pursuant to stipulation. Mr. Dozier did not
testify.

The jury answered the issues in accordance with petitioner's

contentions, *viz.:* "1. What is the true location of the North-South dividing line between the lands of the plaintiff and those of the defendant? ANSWER: A — B.  2. What is the true location of the East-West dividing line between the lands of the plaintiff and those of the defendant? ANSWER: B — C."

Judgment in accordance with the verdict was entered. Respondent excepted and appealed.

*Sawyer & Loftin and Gordon Battle for petitioner appellee.*
*Graham & Levings and Lucius M. Cheshire for respondent appellant.*

BOBBITT, J.  Respondent's brief discusses matters relating solely to the location of the north-south dividing line, a line extending south from King Street. On the court map, this line is shown as the line A to B, according to petitioner's contention, and as the line 2 to 4, according to respondent's contention. The land between A-B and 2-4 has a width of 5.07 feet at its northern terminus (King Street) and a width of 8.32 feet at its southern terminus.

Respondent, in its brief, states it "does not desire to pursue the matter of the southern boundary."

Well established legal principles, applicable here, include the following:

The sole purpose of a processioning proceeding is to establish *the true location* of disputed boundary lines. *Pruden v. Keemer,* 262 N.C. 212, 136 S.E. 2d 604, and cases cited. "What constitutes the line, is a matter of law; where it is, is a matter of fact." *McCanless v. Ballard,* 222 N.C. 701, 703, 24 S.E. 2d 525; *Jenkins v. Trantham,* 244 N.C. 422, 426, 94 S.E. 2d 311.

The burden of proof rests upon the petitioner to establish the true location of a disputed boundary line. *Plemmons v. Cutshall,* 234 N.C. 506, 67 S.E. 2d 501; *McCanless v. Ballard, supra.* "If the plaintiffs are unable to show by the greater weight of evidence the location of the true dividing line at a point more favorable to them than the line as contended by the defendants, the jury should answer the issue in accord with the contentions of the defendants." *Cornelison v. Hammond,* 225 N.C. 535, 35 S.E. 2d 633, and cases cited.

"A description contained in a junior conveyance cannot be used to locate the lines called for in a prior conveyance. The location of the lines called for in the prior conveyance is a question of fact to be ascertained from the description there given." *Carney v. Edwards,* 256 N.C. 20, 25, 122 S.E. 2d 786, and cases cited.

Petitioner acquired title to the land adjoining respondent on the east by (recorded) deed dated May 14, 1943, from E. R. Liner and wife, Ollie Mae Liner. The description in said deed begins as follows: "Beginning at the northeast corner of A. F. Crabtree's blacksmith lot on the south side of King Street and runs east along said street . . ." It concludes as follows: "thence west . . . to the southeast corner of the Blacksmith lot; thence with the line of said lot to the beginning." E. R. Liner and wife, Ollie Mae Liner, acquired title to this land by (recorded) deed from Farmers & Merchants Bank dated September 1, 1937.

Respondent acquired title to its land by (recorded) deed dated April 15, 1957, from R. P. Burns, Commissioner. The description in said deed is as follows: "(B)eginning at a stake on King Street, E. R. Liner's northwest corner, running thence with his line south approximately 112½ feet to a stake in the property line of Orange County, thence westward with the property line of Orange County and Mrs. Parker, and parallel with King Street approximately 86 feet to a stake in the line of H. W. and J. C. Webb estate; thence with the Webb line northward approximately 112½ feet to a stake on King Street, Webb's Northeast corner, thence with King Street approximately 86 feet to the beginning, said lot having been acquired by John D. Morris under deed from Walter S. Crabtree (unmarried), dated September 1, 1941, and recorded in . . . Book 115, page 62."

The description in the (recorded) deed dated September 1, 1941, from Walter S. Crabtree (unmarried) to John D. Morris is the same (except as to minor immaterial variations) as the description in said deed from R. P. Burns, Commissioner, to respondent. This deed, after the particular description, refers to the instruments in Crabtree's chain of title described below.

Walter S. Crabtree acquired title under the will (dated August 18, 1928) of his grandfather, A. F. (Albert) Crabtree, and Albert Crabtree acquired title under the will (dated March 28, 1898) of Charles F. Crabtree.

The land was conveyed to Charles F. Crabtree and Fannie Crabtree by (recorded) deed dated September 26, 1888, from Steven T. Forrest, Executor of George A. Faucette, in which the land is described as follows: "Adjoining the lands of John Laws, Bedford Wilson and Empson Moore and others and bounded as follows: Beginning at an iron spike on King Street, corner of Empson Moore lot, thence south 1 chain and 60 links to a rock, John Laws corner, thence east one chain and 12 links to a post, thence north 1 chain and 60 links to the corner of the shop on King Street, thence west

one chain and 12 links to the beginning, containing 18/100 of an acre."

The description in the 1941 deed to John D. Morris and in the 1957 deed to respondent begins on King Street, "E. R. Liner's northwest corner." The description in the 1943 deed to petitioner and in the 1937 deed to E. R. Liner and wife, Ollie Mae Liner, begins "at the northeast corner of A. F. Crabtree blacksmith lot on the south side of King Street." All of said deeds, except the 1888 deed to Charles F. Crabtree and Fannie Crabtree, identify the northwest corner of petitioner and the northeast corner of respondent as being one and the same. The earlier of said deeds is the 1937 deed to the Liners.

The description in the 1888 deed to Charles F. Crabtree and Fannie Crabtree, being the oldest deed *in evidence* in either chain of title, *begins* at the *northwest* corner (rather than the northeast corner) of the land conveyed therein and identifies said beginning point as "an iron spike on King Street, corner of Empson Moore lot."

The evidence as to the location of the east line of the Crabtree blacksmith lot was in sharp conflict. There was no evidence of any monument marking the northwest corner of petitioner's land, that is, the northeast corner of respondent's land. There was evidence tending to show the blacksmith shop, which was torn down about 1940, was located in the northeast corner of the Crabtree lot. There was evidence a hedgerow planted by the Liners ran north-south along the line 2-4 as shown on the court map; that the northern terminus of this hedgerow was the west end of a rock retaining wall built by the Liners, parallel with King Street, across the front of their land; and that south of said hedgerow and in line therewith there was ·a series of fence posts. Evidence favorable to respondent tends to show this hedgerow was immediately to the east (a foot or so) of the east wall of the blacksmith shop. Evidence favorable to petitioner tends to show this hedgerow was more than five feet east of the east wall of the blacksmith shop and of the line A-B.

The crucial question on this appeal is whether the court committed prejudicial error by admitting in evidence, over objections by defendant, certain documents and testimony offered by petitioner in an attempt to locate the northeast corner of the Empson Moore land and thereby fix the beginning point of the description in said 1888 deed to Charles F. Crabtree and Fannie Crabtree.

Conceding, *arguendo,* that the Crabtree deed of 1888 was junior to some deed to Empson Moore, and that the location of the northeast corner of the Empson Moore land determined the location of the northwest (beginning) corner of the Crabtree land, these mat-

ters have no significance unless and until the location of the north-east corner of the Empson Moore land as of 1888 is established by competent evidence.

The documents referred to below were offered by petitioner and admitted in evidence over objections by respondent.

1. A deed dated March 23, 1936, recorded in Book 104, p. 170, from Sarah T. Webb (unmarried) *et al.,* to the Board of Commissioners of Orange County.

2. A *quitclaim* deed (date not shown), recorded in Book 189, p. 292, from Elizabeth D. Webb (widow), Elizabeth Webb Matheson and husband, D. S. Matheson, *et al.,* to Orange County.

3. A deed dated June 14, 1917, recorded in Book 72, p. 586, from Hillsboro Milling and Manufacturing Company to W. H. Walker, H. J. Walker and Charles M. Walker (W. H. Walker & Brothers).

4. A map prepared by Robert A. Jones, registered surveyor, purporting to show the location of petitioner's land, bearing the legend, "Surveyed March 1964," on which the land described in the deed recorded in Book 104, p. 170, is shown as "County Agricultural Building Lot, Formerly Webb Heirs," and the land described in the *quitclaim* deed, recorded in Book 189, p. 292, is shown as "Orange County Agricultural Building Parking Lot, Formerly Webb Heirs." The land described in the deed to the Walkers is shown as lying immediately south of the lands described in the deeds recorded in Book 104, p. 170, and in Book 189, p. 292. It is noteworthy that the land shown on the Jones map as adjoining on the west the land of respondent is the land described in said *quitclaim* deed.

5. Map of the Plan of the Town of Hillsboro, dated 1863, bearing this notation: "Scale 1″=4 chains=264′." Streets shown on this map include King Street (running east-west) and Churton Street (running north-south). The lots fronting on the south side of King Street, proceeding east from Churton Street, are numbered 1, 2, 44, 45 and 46. No courses and distances are shown with reference to streets or lots. There appears on Lot 1 a diagram and the words "Court House" and a strip of land immediately west of the east line of Lot 1 is shown as "Court Street."

Using the documents referred to in the above numbered paragraphs as a basis therefor, plaintiff's surveyor and witness (Robert A. Jones) testified to the location of the northeast corner of the land described in said deeds from the Webb heirs to Orange County; that this corner was on the south side of King Street 330 feet from a point he had determined to be the southeast corner of King and Churton Streets as shown on the 1863 map; and that, based on his testimony that the frontage of each lot shown on the map was 165

feet, the corner he identified as the northeast corner of the land described in the deeds from the Webb heirs to Orange County was the northeast corner of Lot 2 and the northwest corner of Lot 44 as shown on said 1863 map and was the corner designated on the Jones map of March 1964 (petitioner's Exhibit No. 1) by the letter "D."

Jones was asked this question: "Can you point out to the jury and court where the lot known as the Empson Moore lot is located on plaintiff's Exhibit No. 1?" Respondent objected. The objection was overruled and respondent excepted. This follows: "A. Let the records show that witness pointed out the lot designated (on) plaintiff's Exhibit 1, as Orange County Agricultural Building Parking Lot, formerly Webb heirs."

It is noted that the lot so pointed out is that described in said *quitclaim* deed. The northeast corner thereof is indicated by the letter "D." Jones testified the letter "D" as shown on his map is at the location shown on the court map as the northwest corner of respondent's land and identified on the court map by the letter "D." If, in fact, Empson Moore's northeast corner as of 1888 was at the point indicated by the letter "D," this would constitute material support for petitioner's contention.

The record is silent as to the source of Empson Moore's title. No deed *to or from* Empson Moore was offered in evidence. Empson Moore's northeast corner was not established by running the courses of a deed to him. Nor was there evidence purporting to prove its location by testimony of common reputation in the neighborhood in the manner set forth in Stansbury, North Carolina Evidence, Second Edition, § 150.

None of the documents referred to in the above five numbered paragraphs affords a basis for establishing Empson Moore's northeast corner as of 1888. With reference to the three deeds, all were made years *after* the deed of 1888 to Charles F. Crabtree and Fannie Crabtree; and nothing in the record purports to show the connecting links, if any, between Empson Moore and the Webb heirs or between Empson Moore and Hillsboro Milling and Manufacturing Company. With reference to the 1863 map, no deed in evidence refers to said map in any manner. None of these documents affords any basis for the testimony of Jones to the effect the respondent's northwest corner as shown on the court map is the same as Empson Moore's northeast corner as of 1888. Nothing in the record supports the theory or speculation that the northeast corner of the Empson Moore lot was the northeast corner of Lot 2 as shown on said 1863 map.

Petitioner cites *McKay v. Bullard*, 219 N.C. 589, 14 S.E. 2d 657,

an action in ejectment, as authority for the admission of said 1863 map. In *McKay,* the court admitted in evidence a map referred to in testimony as the official map of the old part of the town of Elizabethtown. The land involved was described as, "In the Town of Elizabethtown, beginning at the Northeast corner of the intersection of Queen and Poplar Streets, and running thence as the East line of Poplar Street, . . ." Presumably, the map was considered in locating the streets called for in said description. Assuming, without deciding, the 1863 map may have been competent for the purpose of locating streets shown thereon, here there is no controversy as to the location of the south side of King Street.

The conclusion reached is that said documents were incompetent and the admission thereof and of testimony based thereon was prejudicial error.

There was evidence that E. R. Liner died prior to the trial of this action. We pass, without discussion, questions relating to the competency of certain testimony as to statements (declarations) attributed to E. R. Liner. Suffice to say, the established rules relating to the admissibility of such testimony are stated in Stansbury, *op. cit.,* § 151.

For the errors indicated, the verdict and judgment as to the first issue are set aside and a new trial as to the first issue is awarded. However, since respondent has abandoned its appeal with reference to the second issue, the verdict and judgment with reference to the second issue will not be disturbed.

Partial new trial.

MOORE, J., not sitting.