H. P. SMOTHERS, JR., AND WIFE, TILLIE SMOTHERS; J. RALPH PELL
AND WIFE, JEWEL PELL; W. B. HULL AND WIFE, RACHEL HULL;
AND GEORGE B. REID AND WIFE, ANNE P. REID, PETITIONERS, v. AN-
DREW J. SCHLOSSER, JR., AND WIFE, ANGELINE SCHLOSSER; AND
WILLIAM J. SCHLOSSER AND WIFE, RACHEL SCHLOSSER, RE-
SPONDENTS

No. 6818SC342

(Filed 18 September 1968)

**1. Boundaries §§ 8, 9— processioning proceeding**

The sole purpose of a processioning proceeding is to establish the true
location of a boundary line; what constitutes the line is a matter of law,
and where it is located is a matter of fact.

**2. Boundaries § 8— processioning proceeding — burden of proof**

The burden of proof rests upon the petitioner in a processioning pro-
ceeding to establish the true location of the disputed boundary line.

**3. Evidence § 25; Boundaries § 13— contents of court maps**

A court map in a processioning proceeding should show the lands in-
volved and the contentions of the parties as to the location of the dis-
puted boundary.

**4. Boundaries § 14— boundary disputes — survey of lands involved**

While G.S. 38-4 does not require the court to order a survey of the lands
in dispute when the boundaries of lands are in question, it is the better
practice to do so.

**5. Boundaries § 2— inconsistent calls — which call controls**

Where calls are inconsistent, a call to a natural object controls course
and distance; a call to another's line or to a well-recognized corner of an
adjacent tract is a call to a natural object within the meaning of this rule.

**6. Boundaries § 6— disputed boundary — junior and senior deeds**

Where a junior deed calls for a corner or line in a prior deed as the
dividing line between the adjoining tracts, the dividing line must be lo-
cated from the description in the prior deed before resort may be had to
any call in the junior deed.

**7. Boundaries § 6— junior and senior deeds**

Where a deed calls for the corner of an adjacent tract as the beginning
point, such deed is the junior deed notwithstanding the deeds are from a
common source and bear the same date.

**8. Trial § 6— contradictory stipulations**

Contradictory stipulations nullify each other.

**9. Boundaries § 15; Judgments § 4— boundary dispute — ambig-
uous judgment — new trial**

Where the judgment in a processioning proceeding contains inconsistent
conclusions as to the description of the disputed boundary line, and the

description of the adjudged boundary line is not supported by the record, a new trial will be awarded.

APPEAL by respondents from *Bowman, S.J.*, 1 April 1968 Non-Jury Session of Superior Court of GUILFORD County.

In this processioning proceeding the petitioners alleged, and the respondents admitted, that there was a dispute concerning the location of the boundary line between a tract of land owned by the petitioners and a tract owned by the respondents.

Petitioners allege that they are the owners of a "certain tract of land lying and being in the City of Greensboro, County of Guilford, and State of North Carolina, and described as follows:

"BEGINNING at a point in the intersection of the center lines of South Elm Street and Meadowview Road and running with the center line of Meadowview Road South 89 degrees 27 minutes 20 seconds East 566.82 feet to a point; thence South 00 degrees 24 minutes 00 seconds East 817.56 feet to an iron stake in the respondents' line; thence South 88 deg. 26' 15" West 516.35 feet to the center line of South Elm Street; thence with the center line of South Elm Street North 1 deg. 29' 15" West 837.72 feet to the point of beginning."

Petitioners alleged, and respondents admitted, that the disputed boundary line is the southern line of the petitioners' land and the northern line of the respondents' land. Petitioners alleged in substance that the boundary line between the two tracts has been established as described in paragraph seven of their amended petition by deed, estoppel, acquiescence or agreement. Respondents assert that the boundary line between them is the Kirkman line as described in a deed from Victor E. Kirkman to petitioners' predecessors in title, R. J. Harris and P. O. Wilson, dated 12 January 1950 and recorded in Guilford County Registry in Book 1306, page 405. Petitioners contend that the description in this deed to them is in error and that the foregoing is the correct description of their land. Petitioners and respondents agree that the southeast corner of this "Kirkman" tract of land is their common corner and that there is no dispute about where this corner is located on the ground. The controversy arises over the direction the line takes as it extends to the eastern margin of South Elm Street Extension.

From an adverse judgment rendered by the Clerk of the Superior Court, the respondents appealed to the Superior Court for trial *de novo* as provided in G.S. 38-3(b).

A jury trial was waived. After a hearing, the court made find-

ings of fact, conclusions of law, and signed judgment in favor of the petitioners. Respondents excepted and appealed to the Court of Appeals.

*Douglas, Ravenel, Hardy & Crihfield by R. D. Douglas, Jr., and Norman & Reid by William G. Reid for petitioner appellees.*

*Hoyle, Boone, Dees & Johnson by T. C. Hoyle, Jr., and Harry Rockwell for respondent appellants.*

Mallard, C.J.

In the record filed herein the petitioners are sometimes referred to as plaintiffs and the respondents are sometimes referred to as defendants.

Respondents took fifty-three exceptions and group them in ten assignments of error. In their brief respondents assert that only two questions are presented; one, that the trial judge failed "to apply the correct rules of boundary law" and the other, that the trial judge failed to find "as a matter of law" that the disputed boundary line between the parties is that contended by respondents.

[1, 2]    In *Coley v. Telephone Co.*, 267 N.C. 701, 149 S.E. 2d 14, Justice Bobbitt, speaking for the Court, said:

> "The sole purpose of a processioning proceeding is to establish *the true location* of disputed boundary lines. *Pruden v. Keemer*, 262 N.C. 212, 136 S.E. 2d 604, and cases cited. 'What constitutes the line, is a matter of law; where it is, is a matter of fact.' *McCanless v. Ballard*, 222 N.C. 701, 703, 24 S.E. 2d 525; *Jenkins v. Trantham*, 244 N.C. 422, 426, 94 S.E. 2d 311.
>
> The burden of proof rests upon the petitioner to establish the true location of a disputed boundary line. *Plemmons v. Cutshall*, 234 N.C. 506, 67 S.E. 2d 501; *McCanless v. Ballard, supra*. 'If the plaintiffs are unable to show by the greater weight of evidence the location of the true dividing line at a point more favorable to them than the line as contended by the defendants, the jury should answer the issue in accord with the contentions of the defendants.' *Cornelison v. Hammond*, 225 N.C. 535, 35 S.E. 2d 633, and cases cited."

In this case it appears that the parties have attempted to use a diagram drawn on a blackboard, admitted for illustrative purposes, in lieu of a proper map. A photocopy of this diagram, marked exhibit "X", is in the exhibits filed here. The stipulation was that it was to be used for illustrative purposes and was not "intended to reflect,

except roughly, courses, distances, angles and other details, . . ." There are no courses or distances marked on this diagram. Letters were placed on the blackboard to indicate corners shown thereon. There is no map in this record accurately showing the contentions of the parties. There is nothing else in this record with appropriate letters thereon, as used in the transcript by the witnesses and the attorneys, to which we can refer. A "map" is referred to by the witnesses without identifying what "map." It appears that the lawyers, witnesses and court were referring to the blackboard diagram as a map. However, we are, from this record, unable to determine with accuracy to what they were referring.

Petitioners' exhibit #1 is a map by R. D. Trogdon, dated 9 November 1951, and shows the boundary line between the parties to be a straight line running South 88° 26' 15" West.

Some of the petitioners and the predecessors in title of the other petitioners sold to respondents the 1.8-acre tract described in petitioners' exhibit #2, which is a deed dated 9 November 1951, and this deed calls for the south line thereof to run with grantors' southern line South 88° 26' 15" West 210 feet. This 1.8-acre tract is a part of the lands conveyed to petitioners' predecessors in title as described in respondents' exhibit #4.

Respondents' exhibit #1, which is a deed from R. J. Harris et ux to P. O. Wilson et ux, dated 16 February 1950, calls for the boundary line between the parties to run North 85° 30' West.

Respondents' exhibit #2, duplicated by respondents' exhibit #5, is a deed from petitioners H. P. Smothers, Jr., et ux to petitioners W. B. Hull et ux and is dated 23 April 1955. It calls for the boundary line between the parties (which is described as the "original Kirkman line") to run North 85° 30' West.

Respondents' exhibit #3 is a drawing having a legend located in the northwest corner thereof indicating that it was prepared by Moore, Gardner and Associates, Inc., Consulting Engineers. The pointer presumably indicating North on this drawing is pointed toward the bottom thereof instead of toward the top. This drawing has, among other things, two lines beginning at the same unidentified point located somewhere East of South Elm Street. One of these lines is designated, "Line Surveyed by Trulove Engineers, Inc.," and it is shown thereon that it runs from the unidentified point situated in an unidentified line South 88° 50' 30" East for an undisclosed distance to another unidentified point located at an undisclosed distance East of South Elm Street. The other line beginning at the same unidentified point as the line just described is designated, "Line

surveyed by Southern Mapping & Engineering Co.," and it is shown thereon that it runs North 88° 20′ 45″ East for an undisclosed distance to another unidentified point located an undisclosed distance East of South Elm Street.

[3, 4] This map or drawing does not attempt to show the lands of the parties, does not show their contentions, and has no lettering thereon designating corners. A court map should show the lands of and the contentions of the parties as to the location of the disputed boundary. While G.S. 38-4 does not require the court to order a survey of the lands in dispute when the boundaries of lands are in question, it is the better practice to do so.

There is no map marked as a court map in this record. If, as stated by one of the respondents' attorneys on oral argument, the respondents' exhibit #3 is intended to be such a "map," it is entirely inadequate in that it does not set out the contentions of the parties and it is lacking or deficient in other details referred to above.

[5-7] In 2 Strong, N. C. Index 2d, Boundaries, § 2, we find the following general rule stated with respect to inconsistent calls:

> "Where the calls are inconsistent, the general rule is that calls to natural objects control courses and distances. A call to a wall, *or to another's line,* if known or established, is a call to a monument within the meaning of this rule, as is a call to a highway. (emphasis added)
>
> . . .
>
> A call to a natural object which is permanently located controls course and distance, and a well-recognized corner of an adjacent tract is a call to a natural object within the meaning of this rule."

In 2 Strong, N. C. Index 2d, Boundaries, § 6, we find the following general rule stated with respect to the calls in junior and senior deeds:

> "Where a junior deed calls for a corner or line in a prior deed as the dividing line between the adjoining tracts, the dividing line must be located from the description in the prior deed, even to the extent of reversing a call in such prior deed when necessary, before resort may be had to any call in the junior deed, and in such circumstances the question of lappage cannot arise. The correct boundaries can be established only by surveying the senior conveyance.
>
> Where a deed calls for the corner of an adjacent tract as the beginning point, such deed is the junior deed notwithstanding the

fact that the deeds to both tracts, from a common source, bear the same date."

Respondents' exhibit #4 is a deed dated 12 January 1950 from Victor E. Kirkman to R. J. Harris and P. O. Wilson recorded in Book 1306, page 405. It is clear, in applying the foregoing principles of law, that the boundary line between the parties, unless changed in some lawful manner, is the South line in this deed (Res. Exh. #4), provided this line can be established. Respondents' exhibit #4 is the senior deed. The deed to the respondents from E. D. Yost and wife dated 13 July 1951, introduced into evidence as respondents' exhibit #7, is the junior deed calling for the Kirkman line as its North boundary line and has as its beginning corner the southwest corner of V. Kirkman in the eastern margin of South Elm Street. The South line of the Kirkman deed (Res. Exh. #4) runs from the southeast corner North 85° 30' West 758 feet to a stake in the eastern margin of South Elm Street Extension. The North line of respondents' tract is "Beginning at an iron pipe in the eastern margin of South Elm Street *V. Kirkman's Southwest Corner, and running thence with said Kirkman's South line South 88° 59' East 741.88 feet to an iron rod, Kirkman's southeast corner; . . .*" (emphasis added) It is clear from the courses of these two lines in these two deeds that the boundary line between the parties is a straight line, beginning at Kirkman's southeast corner and extending to the eastern margin of South Elm Street. Although the courses in the two deeds are different, the parties agree that their common corner is the southeast corner of the Kirkman tract and that they are in agreement as to where it is on the ground. But they disagree as to the location of the southwest corner of the Kirkman tract and the connecting line between the two corners. There are five different courses called for in different instruments as to the course of the boundary line between the parties.

The parties stipulate:

"(1)  That the illustrative diagram herein designated as Exhibit 'X' is an accurate representation of the blackboard diagram used for illustrative purposes in the trial of this action.

(2)  That the diagram is not drawn to scale and is not intended to reflect, except roughly, courses, distances, angles and other details, but is intended to illustrate the general relative positions of points and corners referred to in the testimony.

(3)  That point O, an iron rod, is the southeast corner of the Kirkman land, is the southeast corner of the land conveyed by Kirkman to Harris and Wilson by deed recorded in Book 1306, page 405, which is Respondents' Exhibit #4, and is the south-

east corner of the 1.8-acre tract conveyed by Harris and Wilson and Pell and Reid to Schlosser by deed recorded in Book 1442, page 453, which is Petitioners' Exhibit #2.

(4)   That point E, an iron stake, is the northeast corner of said 1.8-acre tract, and is in the east line of the Kirkman land and in the east line of the land conveyed by Kirkman to Harris and Wilson by the deed above mentioned, Exhibit #4.

(5)   That the line O to D is the Petitioners' contention as to the true dividing line, and line O to C is the Respondents' contention as to the true dividing line."

It should be noted that there is no substantive evidence in this record using letters therein or thereon to which the stipulations designated by letters can apply. In fact, the only exhibit containing a line or lines marked "O to D" and "O to C" is the blackboard diagram. This was received for illustrative purposes. We are unable to determine from this record to what these stipulations refer. Respondents state in their brief that:

"Reference by alphabetical letters to lines and corners are to the illustrative diagram designated Exhibit 'X', which is a reproduction of the blackboard diagram used in the trial."

[8]   It appears from the evidence and stipulations in this case that the southeast corner of the Kirkman land, the southeast corner of the land conveyed by Kirkman to Harris and Wilson by deed recorded in Book 1306, page 405, which is respondents' exhibit #4, and the southeast corner of the 1.8-acre tract conveyed by Harris and Wilson and Pell and Reid to Schlosser by deed recorded in Book 1442, page 453, which is petitioners' exhibit #2, is a known admitted corner.

The parties have by stipulation agreed that point "E" on exhibit "X", the blackboard diagram, is an iron stake and is the northeast corner of the 1.8-acre tract, and *that it is in the east line of the Kirkman land and in the east line of the land conveyed by Kirkman to Harris and Wilson* by respondents' exhibit #4. This appears to be, from this record, a contradictory stipulation inasmuch as the east line of the 1.8-acre tract, as shown on petitioners' exhibits #1 and #2, runs South 00° 24' 05" East from the northeast corner thereof to the known and stipulated southeast corner, and the East line in respondents' exhibit #4 runs a different course, to wit, South 03° 28' West to the same known and stipulated southeast corner. Petitioners exhibit #2 is dated 9 November 1951, and respondents' exhibit #4 is dated 12 January 1950. The East line of the "Kirkman land" is

not separately identified in the stipulation other than as it may be referred to in the exhibits above mentioned. We are of the opinion and so decide that these contradictory stipulations would have the effect of nullifying each other. Respondents' exhibit #6, which was not admitted in evidence, purports to show the contentions of the parties by the use of internal angles instead of courses. However, the beginning point for the determination of these angles in each instance is the same East line and thus apparently does not take into account the differences in the location of and courses of these lines as shown in petitioners' exhibits #1 and #2 and respondents' exhibit #4.

The condition of this record in the failure to have a map is such that we are unable to rule on many of the exceptions to the evidence because of our inability to ascertain to what the evidence relates.

. The petitioners assert that the boundary line between the parties, as they contend for, is an agreed line, or one established by estoppel or acquiescence. The judge in entering the judgment found "(t)hat the respondents, in accepting the deed for the 1.8-acre tract of land dated November, 1951, and recorded in Book 1442, page 453, with the southern boundary described therein and made pursuant to the Trogdon plat, agreed that the bearing on said southern boundary constituted the true dividing line between the parties and they are therefore estopped to deny that the dividing line between the parties is the line as set out in said deed."

Petitioners excepted to this finding on the grounds that there was no evidence thereof in this record. Since the case must go back for a new trial, and in view of the record herein, we do not decide the question as to whether there was competent evidence to support such a finding. The applicability of this principle of law is not properly presented by this record on appeal. However, in discussing the question of the fixing of boundary lines by parol agreement, Chief Justice Parker said for the Court in *Andrews v. Andrews*, 252 N.C. 97, 113 S.E. 2d 47:

> "A multitude of jurisdictions hold that an uncertain and disputed boundary line may, under certain circumstances, be fixed permanently by parol agreement, if accompanied by sufficient acquiescence and possession, but where there is no *uncertainty* as to the boundary line, a parol agreement fixing a boundary line in disregard of those fixed by the deeds is void under the Statute of Frauds, as it amounts to a conveyance of land by parol. 11 C.J.S., Boundaries, Sec. 67; 8 Am. Jur., Boundaries,

Sec. 73; Tiffany Real Property, 3rd Ed., Sec. 653; Annotation 69 A.L.R. 1433. This general rule of law invoked by respondent is not applicable to the facts here, and it is not necessary for us to decide as to whether or not it is in conflict with some of our decisions, for the reason that here there is no uncertainty as to what the true boundary line is, and its true location on the premises can be fixed by the deeds and a survey.

This Court said in *Haddock v. Leary,* 148 N.C. 378, 62 S.E. 426: 'For nothing is better settled in this State than that if the calls of a deed are sufficiently definite to be located by extrinsic evidence, the location cannot be changed by parol agreement, unless the agreement was contemporaneous with the making of the deed.'

This Court said in *Kirkpatrick v. McCracken,* 161 N.C. 198, 76 S.E. 821: 'Where a division line between tracts of land is well ascertained, and can be located by the plain and unambiguous calls of the deed, the acts and admissions of the parties claiming the respective tracts are not competent evidence, either to change the line or to estop the party from setting up the true line. *Shaffer v. Gaynor,* 117 N.C. 15. But where the dividing line is in dispute, and is unfixed and uncertain, the acts and admissions of the adjoining proprietors recognizing a certain line as the proper division line is evidence competent to be submitted to the jury.'

'If the calls in a deed are sufficiently definite to be located by extrinsic evidence, the location cannot be changed by parol agreement unless the agreement was contemporaneous with the making of the deed.' *Daniel v. Power Co.,* 204 N.C. 274, 168 S.E. 217.

The true principle is laid down by Smith, C.J., in laconic language in *Davidson v. Arledge,* 97 N.C. 172, 2 S.E. 378: 'The rejected evidence would have been competent to fix an uncertain and controverted boundary, but not to change that made in the deed that distinctly defines it.'

*Wiggins v. Rogers,* 175 N.C. 67, 94 S.E. 685, was an action brought to recover a parcel of land the ownership of which depended on the true location of the dividing line between adjoining landowners. The Court said: 'Plaintiff proposed to show that the line had been run some years before the time of the trial by Posey Hyde, and that the respective owners had recognized it as the line of division between them for many years. This evidence was excluded by the Court, but we think it was compe-

tent, not to change the boundaries of the land (*Davidson v. Arledge,* 97 N.C. 172), or, in other words, to show that the parties had orally agreed upon a line different from the true line, but as some evidence to prove where was the true line.' "

For more on the establishment of a boundary line by oral agreement or acquiescence, see 113 A.L.R. 421.

**[9]** After hearing the evidence and making extensive findings of fact, the judge concluded as a matter of law that:

"(T)he disputed boundary line is located as contended by the petitioners, which is described as follows:

BEGINNING at a point which is South 88 deg. 26′ 15″ West, 210 feet from an iron stake at the southeast corner of the *1.84-acre tract* above referred to, and continuing from said beginning point *South 88 deg. 26′ 15″* West to the eastern margin of South Elm Street." (emphasis added)

There is no 1.84-acre tract of land mentioned in the judgment or in the record, and hence "above referred to" means nothing.

Thereupon, it was adjudged that the common boundary between the parties was located:

"BEGINNING at a point which is located South 88 deg. 26′ 15″ West 210 feet from an iron stake, the southeast corner of the *1.84-acre tract* conveyed by Pell et al to Schlosser, et al, by deed recorded in Book 1442, page 453, in the Guilford County Registry; and running from said beginning point *South 88 deg. 20′ 45″ West* to the eastern margin of South Elm Street." (emphasis added)

This description is different from the description of the location of the boundary line appearing in the conclusions of law as set out in this judgment. Thus, the two descriptions of the location of the boundary line in the judgment are inconsistent. The judgment is ambiguous and is not supported by the record insofar as it attempts to change the boundary line from one straight line extending from the known and agreed southeast corner of the Kirkman land to South Elm Street.

"Where a judgment remains ambiguous after resort to the pleadings and record to ascertain its meaning, and is not supported by the record, a new trial will be awarded." 5 Strong, N. C. Index 2d, Judgments, § 4.

The parties would be well advised, before this case is tried again, to have one map made showing the location of the lands of the pe-

titioners and the respondents as well as the location of the boundary line between them as contended for by each of the parties. *Perkins v. Clarke,* 241 N.C. 24, 84 S.E. 2d 251.

In view of the contradictions in the stipulations, the condition of the record as set forth herein, and the contradictions in the location of the line as set out in the judgment, a new trial is ordered. We do not deem it necessary to discuss other exceptions of the respondents, some of which may have merit but may not occur on a new trial.

The judgment of the Superior Court is reversed, and a new trial is awarded.

Reversed.

. CAMPBELL and MORRIS, JJ., concur.